## Wytheville.

### NORFOLK & ATLANTIC TERMINAL COMPANY v. MORRIS' ADMINISTRATRIX.

June 11, 1903.

1. EVIDENCE—*Order of Examination—Discretion of Trial Court—Appeal and Error.*—The order in which evidence is introduced is a matter largely in the discretion of the trial court for which this court will not reverse a judgment save in very exceptional cases. It will not reverse merely because a witness is allowed to answer a question on cross-examination which might more properly have been introduced in rebuttal.

2. STREET RAILWAYS—*Passengers—Negligence—Starting Car.*—A person intending to enter a street car which has stopped for passengers, and who endeavors to enter the same while it is standing, is a passenger under the care of the street car company, and if, in endeavoring to enter the car, in the exercise of such care as might reasonably be expected of one of his age under the circumstances, he is thrown from the car and injured by the negligent starting of the car, the company is liable.

3. STREET RAILWAYS—*Negligence—Prematurely Starting Car—Passenger.* It is the duty of a street car company, when its cars have stopped for passengers, to use the highest degree of care to see that all passengers lawfully entering its cars are in a place of safety thereon before starting, and if a passenger is injured from the consequence of starting the car at a time when, by the exercise of such care, it was known or might have been known to the servant of the company that he had not reached a place of safety, the company is liable.

4. APPEAL AND ERROR—*Setting Aside Verdict—Conflicting Evidence.*—In an action for death by wrongful act of another, if the evidence as to the negligence of the defendant and the contributory negligence of the plaintiff is conflicting, and the jury has been properly instructed, the verdict cannot be disturbed on writ of error, if there is sufficient evidence to support it.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, rendered June 25, 1902, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

The instructions given by the court were as follows:

1. The court instructs the jury that a street car company engaged in the business of carrying passengers is bound to use the utmost care and diligence for the safety of passengers, and is liable for an injury to a passenger occasioned by the slightest neglect against which human prudence and oversight might have guarded, if the passenger himself has not been guilty of any negligence which contributed to the injury.

2. The court further instructs the jury that, if they believe from the evidence that the decedent, Robert R. Morris, on the 9th day of June, 1901, endeavored to get into the car of the defendant company, while it was standing at its stopping place at Sewell's Point for the purpose of receiving passengers, and without any objection on the part of any employee of the company, with the object of coming to Norfolk therein, then the plaintiff, in so endeavoring to get into said car was a passenger under the care of the said defendant company; and if the jury further believe from the evidence that the said Robert R. Morris was thrown from the said car and injured by the negligent starting of said car, while he was in the act of getting therein, and while exercising such care as might reasonably be expected of a man of his age under the circumstances, and that he died within a few days thereafter as the result of the injuries so received, then they should find for the plaintiff.

3. The court further instructs the jury that it is the duty of a street car company, when its cars are standing at a stop-

ping place for the reception of passengers, to use the high-
est degree of care to see that all passengers lawfully entering
its cars, get to a place of safety thereon before starting its cars,
and if they believe from the evidence that the defendant com-
pany started its car when the decedent, Robert R. Morris, was
lawfully entering the said car and before he could get into a
place of safety thereon, and that the fact that said decedent was
so entering said car and had not gotten to a place of safety
thereon at the time it was started, was known to said defend-
ant or its servants, or could have been known to them by the
exercise of the greatest care, and that his death was caused by
the failure of said defendant to exercise such care, then they
should find for the plaintiff; unless they believe from the evi-
dence that said Morris was guilty of negligence which con-
tributed to the injury.

4. The court further instructs the jury that, if the defend-
ant seeks to relieve itself of liability by reason of the plaintiff's
having been guilty of contributory negligence, the burden of
proving such contributory negligence rests upon the defendant,
unless such contributory negligence is disclosed by the plain-
tiff's evidence, or can fairly be inferred from the circumstances.

5. The court further instructs the jury that, although they
may believe from the evidence that the rules and regulations of
the defendant company forbade passengers getting upon its
cars on the side on which the plaintiff's intestate was, at the
time of the injury complained of, yet if they believe from the
evidence that the defendant's servants had not enforced said
rules and regulations in that respect, but had systematically
allowed the same to be violated, and it had become usual and
customary for passengers to board cars of the defendant at
that point on that side, and that on the day on which the injury
was sustained numbers of passengers did board said car on that
side, which was known to the said defendant's servants, and
without complaint by them or any attempt to prevent the same;

then they are instructed that the plaintiff is not prevented from recovery because her said intestate boarded the said car on the side on which he was at the time of the injury, unless they further believe from the evidence that to board said car at that point, time and place was obviously dangerous, and such an act as a reasonable man would have regarded as attended with danger.

6. The court further instructs the jury that, although they may believe from the evidence that the decedent at the time of the injury complained of was suffering from a disease, or a predisposition to a disease, which concurring with the injury produced his death, yet if they further believe from the evidence that the injury suffered by the decedent brought about and caused the active development of such disease, and that if it had not been for such injury the disease would not have alone caused decedent's death at that time, then they are instructed that the effect of such disease or predisposition to disease on the part of the decedent does not alone relieve the defendant from liability should they deem it otherwise liable.

7. The court further instructs the jury, if they find for the plaintiff, they may assess the damages in such a sum as they may deem fair and just under all the circumstances of the case; such damages not to exceed ten thousand dollars ($10,000), and may direct in what proportion any damages they may assess shall be distributed to the wife and children of the said decedent.

8. The court further instructs the jury that, although the plaintiff must prove his case by a preponderance of evidence, yet this does not necessarily mean that he must prove it by the greater number of witnesses. In ascertaining upon which side is the preponderance of evidence the jury should consider not only the number of witnesses, but also their credibility and the reasonableness of their testimony when taken in connection with all the facts and circumstances of the case.

9. If the jury, after considering all the evidence, should conclude from the evidence that the plaintiff is entitled to damages, in arriving at the amount of such damages they should consider the physical condition of R. R. Morris at the time of the injury among other facts given in evidence, and should assess the damages at such sum as they consider fair and just under all the circumstances of the case.

10. In order for the plaintiff to recover it must be established that the defendant company was guilty of negligence which caused the death of R. R. Morris. The burden of establishing this is upon the plaintiff, and she must prove it to the satisfaction of the jury by a preponderance of the evidence, the jury to take into consideration and weigh the evidence for the defendant as well as for the plaintiff, and even if defendant was negligent she cannot recover if R. R. Morris contributed to his injuries by his own negligence.

11. The mere fact that R. R. Morris had his leg crushed by a car of the defendant, whether death resulted therefrom or not, does not prove negligence on the part of the defendant.

12. That the death of R. R. Morris was caused by the injury done him by the car of the defendant must be proved by the plaintiff by a preponderance of testimony. If the jury believe from the evidence that death did result therefrom, still the plaintiff cannot recover unless she prove injury to have been caused by negligence of the defendant, and not then, if the jury further believe from the evidence that R. R. Morris contributed to his injury by his own negligence.

13. If the jury believe from the evidence that the defendant's cars were full of passengers so that there was not available space for the reception in a place of safety thereon of R. R. Morris as a passenger, and that the said R. R. Morris knew or was informed of this fact, and was prohibited by the Assistant Superintendent of the defendant's company from remaining on said car in an unsafe place, or was requested by said As-

sistant Superintendent to get off of such unsafe place on said car and wait for the next car; and that notwithstanding such prohibition or request the said R. R. Morris left the car and afterwards got on the train, or attempted to do so, then the court instructs the jury that the said R. R. Morris was not a passenger of the defendant.company, and the company is not liable for injuries done him unless the same were caused by the wilful or reckless acts of said company.

14. Any act on the part of R. R. Morris which contributed to the injury and which an ordinarily prudent man, acting prudently, would not have done is contributory negligence on his part.

15. If the jury believe from the evidence that R. R. Morris attempted to get upon the car of the defendant after the same had started and while same was in motion, and in making such an attempt fell and thereby occasioned the injury complained of, then the court instructs the jury that the said R. R. Morris took the risk of boarding the car while it was in motion upon himself, and they must bring in their verdict for the defendant.

16. If the jury believe from the evidence that there was plenty of light in and about the cars, it was not negligence if lights were not stationed in the cars themselves.

17. If the jury believe from the evidence that the defendant's cars were stopped at its Sewell's Point Pier Terminus for a reasonable time to enable passengers to get on, and that said cars became crowded and full with passengers, and that then the conductor called "All aboard," and the motorman hammered his gong before starting, and that the cars started smoothly without unusual jolts or jerks, and that there was plenty of light in and about the cars, and that R. R. Morris attempted to get upon said cars after such signals to start were given, and that the defendant did not know Morris was attempting to get on the cars in time to prevent the accident, or could not have known it, by the exercise of the greatest care, then the

court instructs the jury that there was no negligence on the part of the defendant, in which case the jury should bring in their verdict for the defendant.

*Harry L. Lowenberg,* for the plaintiff in error.

*Green, Withers & Green* and *W. H. Venable,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Morris' administratrix sued the Norfolk & Atlantic Terminal Company to recover damages for the death of her intestate, which it is alleged was caused by the negligence of the defendant company. There was a verdict and judgment against the company, to which, upon its petition, a writ of error was awarded.

The first error assigned is to the ruling of the trial court under the following circumstances:

The defendant company, to maintain the issue upon its part, introduced George C. Reid, who, having been examined in chief, upon cross-examination by plaintiff's counsel, was asked the following question: "Did this car give any signal before it started?" Defendant objected to this question on the ground that it referred to a matter not testified to by witness on direct examination, whereupon counsel for plaintiff said they would make witness their own. Defendant then objected on the ground that it was not the "proper time for the introduction of other witnesses on behalf of plaintiff, as defendant was not through with its witnesses, and that in no event could plaintiff introduce other witnesses to testify except in rebuttal." The objections were overruled, and the witness was permitted to answer the question.

This is no ground for reversal. In *Flick* v. *Commonwealth,* 97 Va. 766, 34 S. E. 39, it was held that the order in which

evidence is introduced is a matter largely in the discretion of the trial court, for which this court will not reverse the judgment of the trial court save in very exceptional cases. It will not reverse merely because evidence proper in chief was introduced in rebuttal.

The second bill of exceptions is to the action of the court in granting certain instructions asked by the plaintiff and in refusing those asked by the defendant.

The petition of plaintiff in error in its assignment of error with respect to the instructions makes specific objection only to the second and third of those given by the court, and refers in general terms to the sixth instruction asked for by the defendant as stating the law correctly. The instructions given to the jury will appear in the report of the case. They involve no principle that has not been time and again dealt with by this court, and we do not deem it necessary to advert to them further than to say that they fairly and correctly state the law of the case in every aspect presented by the evidence.

The sixth instruction asked for by the defendant company above referred to is in the following words:

"The defendant company was bound to have its cars stop a reasonable time at its Sewell's Point terminus to allow passengers to get on the same; but, if its cars did so stop, it was not bound to look after the movement of all of its passengers and of said R. R. Morris, but that said passengers and said R. R. Morris were presumed by the law to take care of themselves and avail themselves of the reasonable opportunity to board the cars which was afforded them."

It was not error to refuse this instruction. It does not correctly state the duty of the defendant company to its passengers in getting on its cars, but the law upon that branch of the subject is well stated in the third instruction given by the court.

The defendant company moved the court to set aside the verdict and grant a new trial, and its refusal to do so constitutes the remaining assignment of error.

The evidence tends to prove the following state of facts: The Norfolk & Atlantic Terminal Company owned and operated a railway line from the city of Norfolk to Sewell's Point. Its terminal at Sewell's Point is at the end of a large pier several hundred feet in length. At the end of its track on this pier, and on the southern side thereof, there is a coal bin. Between the coal bin and the side of a car standing on the track there is a space of about 12 to 18 inches. On the northern side of the track is a warehouse. Between the warehouse and track there is a space of from 12 to 15 feet, from which passengers usually get on board the cars. On the 9th of June, 1901, between 7 and 8 o'clock P. M., a closed motor car, to which was attached an open trail car, stood at this terminus for several minutes, waiting to receive its passengers. There was quite a crowd gathered, seeking to take the train on its return trip to Norfolk. Among them was R. R. Morris, who was thrown from the car when it started and sustained injuries from which he died on the evening of the next day.

There was, as we have said, quite a crowd seeking transportation to Norfolk. There is evidence which strongly tends to prove that the car started without a proper signal, and with an unusual and violent jerk; and the jury, by its verdict, have established as true all that the evidence tended to prove in support of the verdict. Upon every point of interest in the case there is a conflict of testimony. This is true not only as to all the facts relied upon to establish the negligence of the company, but it is equally true with respect to evidence which tends to prove contributory negligence of the plaintiff's intestate.

It is claimed on the part of the company that the cars were filled to overflowing; that Morris was warned not to attempt to board the cars, and that when he had done so he was ordered to get off. But here we are again confronted with a conflict of the evidence. It is true that the crowd was great and pressing, but it is impossible for the court to say under the circumstances

of this case that it was contributory negligence for Morris to get upon it. All that this court can do in such a case is to see that the jury is properly instructed, and that the testimony, considered as upon a demurrer to the evidence, is sufficient to support the verdict. With this our duty ends, and the law leaves the protection of the litigant to the jury under the supervision of the trial court.

It may be thought that we have dealt somewhat summarily with this case, but there is nothing of novelty in the law which it involves, and a discussion of the facts would be unprofitable.

The judgment is affirmed.

*Affirmed.*