# Richmond

## TRI-STATE COACH CORPORATION v. THOMAS C. STIDHAM, ADM'R, ETC.

January 15, 1951.

Record No. 3716.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Fred B. Greear*, for the plaintiff in error.

*R. C. Shannon*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Lonnie Stidham, a little boy two years and seven months old, a passenger on the bus of the defendant, a common carrier, was killed when the right front wheel of the bus ran over his head soon after he had gotten off the bus. His administrator recovered a verdict and judgment against the defendant on the ground that his death was caused by its negligence.

The defendant operated a bus line from Appalachia, in Wise county, to points in Lee county, over State Route 606. Lonnie lived with his grandmother, Vesta Holdway, and on the day of the accident she was taking him with her on the bus to her garden, near Keokee depot, where she formerly lived. With them was her daughter, Shirley Holdway, then 13 years old. The only other passengers in the bus at the time of the accident were the grandfather, the father and an uncle of the little boy.

On signal the driver stopped the bus on his right-hand side of the road and opened the door on that side where the shoulder of the road was suitable to alight upon. Just ahead of the bus the road turned to the left and a short distance directly in front of the bus a dirt road led over a small bridge out toward the flag station of Keokee and to the garden to which Mrs. Holdway was going. Mrs. Holdway and the two children started from their seats to the front of the bus to get off. Shirley was in front, Lonnie was next, and Mrs. Holdway followed. There is conflict on critical points between the testimony of the bus driver, who was called as an adverse witness by the plaintiff, and the plaintiff's witnesses. In view of the verdict, the evidence most favorable to the plaintiff must now be accepted as establishing the controlling facts.

When the three persons reached the door in the order stated, Shirley, the daughter, got off, ran around the back of the bus, across the road, and when the accident happened was on or across the bridge in front of the bus, which the driver testified was 100 to 120 feet away. There were

two steps leading from the bus to the ground and when Mrs. Holdway made the first step she turned and inquired of the driver when the bus would be back. When he stated a time too soon for her, she inquired as to the next bus and he informed her about that. The little boy stopped with her and stood at her feet but she did not have hold of his hand, and while she was talking to the driver he got off. Mrs. Holdway testified that the boy was standing there when she turned to speak to the driver and that he must have gotten off during their conversation. When she had finished talking she turned around and this is what she said happened: "I stepped off the bus and by the time I stepped off the bus on the ground the man pulled out and the baby screamed." Other witnesses testified that the bus started as soon as Mrs. Holdway stepped off. The bus driver was asked how much time he gave her to look for the children and he replied, "Well, I didn't particularly give her any time, looking for the child, because I didn't even have the child in my mind. The little girl went off with the child."

As stated, the right front wheel had run over the child's head. The bus was stopped quickly; the door had not then been closed. The driver thought he had moved 28 to 36 inches but that was a surmise, based on a wheel mark on the road which he thought could have been caused by the brake on that wheel gripping sooner than the others. The evidence as to the condition of the brakes rather refuted that theory and the plaintiff's evidence was that the bus moved from five to ten feet. It was 55 inches from the front of the bumper back to the front of the wheel. There was a spot of blood and some hair in the road marking where the wheel had gone over the child's head, and this was eight or ten inches behind the wheel. The child's body was under the bus with his feet toward the back, or side, of the bus. His head was drawn to one side in an unnatural position, indicating, the doctor testified, that his neck had been broken. He also testified there were no other bruises on the child's body or breaks in the skin.

■ While nobody saw just how the accident happened, the jury could conclude from the evidence that the child was standing either in front or to the side of the bus and was knocked down when it started. The driver's testimony was that the child "followed on off behind" Shirley but that he did not see him after he got off and did not "particularly" look for him. He said he always looked at his door to see that it was clear, and there was nothing in front of him before he started out, but he did not look with reference to the child. His driver's seat was three feet back of the windshield. He said he could see two or three feet in front of the bus but did not know whether he looked down there when he started. The last he saw "they stepped off the bus. I did not notice which way the kid went, but the girl turned in the direction going toward the rear of the bus."

■ While a common carrier is not an insurer of the safety of its passengers, it owes to them a very high degree of care, and is liable for the slightest negligence that such care could have foreseen and guarded against. *Yellow Cab Co. v. Eden,* 178 Va. 325, 337, 16 S. E. (2d) 625, 629; *Chesapeake, etc., R. Co. v. Hibbs,* 142 Va. 96, 101-2, 128 S. E. 538, 540, 41 A. L. R. 1083; *Norfolk, etc., R. Co. v. Birchfield,* 105 Va. 809, 821, 54 S. E. 879, 883; 9 M. J., Carriers, sec. 49, p. 742.

■ The relation of carrier and passenger does not terminate until after the passenger has alighted from the conveyance and has had reasonable opportunity to reach a place of safety. *Houston v. Lynchburg Traction, etc., Co.,* 119 Va. 136, 141, 89 S. E. 114, 115; *Norfolk, etc., Terminal Co. v. Morris,* 101 Va. 422, 44 S. E. 719; *Virginia Ry., etc., Co. v. Dressler,* 132 Va. 342, 111 S. E. 243, 22 A. L. R. 301; *Lewis v. Pacific Greyhound Lines,* 147 Ore. 588, 34 P. (2d) 616, 96 A. L. R. 718, and Anno. at p. 731 *ff.*

In the *Dressler Case, supra,* it was held that the plaintiff was not a passenger during the interval in which she was walking to transfer from one street car to another and was struck by a third, on the ground that she had reached a

place of safety after alighting from the first car and was at liberty to exercise her own judgment in effecting the transfer. Judge Burks, in the opinion, reviewed a number of cases from other jurisdictions relied on to uphold the view that the passenger status continued during such transfer. He said that practically all of them were either cases in which the passenger was boarding or about to board, or was alighting or had just alighted from, the car, had not had opportunity to reach a place of safety, and was injured by the car he boarded or from which he had alighted; or were cases in which the passenger was under the control of the carrier or moving under its direction. See *Patterson* v. *Duke Power Co.*, 226 N. C. 22, 36 S. E. (2d) 713.

In *Roden* v. *Connecticut Co.*, 113 Conn. 408, 155 A. 721, 722, the defendant stopped its bus on the left side of the street to discharge from the right-hand door a seven-year-old boy, who was struck by a passing car as he was crossing the street from the bus to his home. In holding the defendant liable the court said:

"The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended."

In *Virginia Public Service Co.* v. *Silver*, 4 Cir., 68 F. (2d) 230, 232, the plaintiff, a passenger in a street car, was injured when the car started while she was proceeding to alight and could readily have been seen by the motorman had he glanced in the mirror in front of him. In rejecting a contention that the defendant was not negligent, the court, by Judge Parker, said: "But the rule supported by the great weight of authority is that laid down by the Supreme Court of the United States in the *Harmon Case*" (*Washington, etc., R. Co.* v. *Harmon*, 147 U. S. 571, 13 S. Ct. 557,

37 L. ed. 284), "to the effect that where a street car comes to a stop to allow a passenger to alight, the conductor or motorman must hold it stationary until all who wish to alight are safely off, and he must see and know before putting the car in motion again that no one is in the act of alighting or in any other perilous position." See annotation 56 A. L. R. 981, at page 990.

■ In *White* v. *Chappell*, 219 N. C. 652, 14 S. E. (2d) 843, recovery was denied on the ground that the bus company had provided for the plaintiff's intestate "a safe landing and a landing in safety," in a case in which an eight-year-old boy, who was accompanied by and in the care of his mother, got off the bus ahead of her and was struck by a passing car as he crossed the road. The court said that the primary duty of caring for a child of tender years is on the parent or person having immediate custody of the child, and that the carrier has the right to rely on the presumption that such person will take care of the child; but added:

"However, the carrier is not entitled to act upon such presumption where the carrier's employees who are engaged in the operation of its bus know, or, in the exercise of reasonable care and diligence should know, that such child is or will be exposed to danger or injuries by acts or negligence of the carrier's employees."

See 13 C. J. S., Carriers, sec. 694, at p. 1291; *Walters* v. *Norfolk, etc., R. Co.,* 122 Va. 149, 155, 94 S. E. 182, 184.

In *Houston* v. *Strickland,* 184 Va. 994, 37 S. E. (2d) 64, 165 A. L. R. 537, an intoxicated person had been put off a bus at night and was later struck by another vehicle. It was there said that when it became apparent that the plaintiff's intestate was in a drunken or mental state of irresponsibility, it was the duty of the driver to protect him from the consequences of his folly.

■ In the case in judgment the defendant asked the court to instruct the jury that the child was not a passenger and that the defendant owed him only the duty of ordinary care. The court refused, and instructed that the relation of carrier and passenger existed while the child, the grandmother

and her daughter were on the bus and until they alighted at a reasonably safe place, and left it for the jury to decide whether they had so alighted as to end that relationship. We conclude that was not error under the facts of this case.

There was a conflict in the evidence as to the facts, which it was the duty of the jury to settle. The driver testified that Mrs. Holdway, the grandmother, got off the bus, walked around the back of it and that when she screamed she was on the opposite side of the highway, 20 to 30 feet away from the middle of the bus. That would make quite a different situation from the one described by the plaintiff's evidence. The plaintiff's testimony was that the bus started immediately after Mrs. Holdway stepped off. As stated, Mrs. Holdway said that by the time she stepped to the ground the bus pulled out and the baby screamed and she had no time to see where the child was. The driver's own statement was that he "didn't particularly give her any time," and he "didn't give the child a thought." Yet, according to the plaintiff's evidence, the 13-year-old girl, who did not have the child in charge, had jumped off and run around the bus, leaving the child standing on the step by the grandmother as she turned around and talked to the driver. Before the grandmother finished talking, the child got off, unattended, and in some way got into a place where the bus would run over him when it started. At that time the girl had gone completely around the bus and was on the bridge in front of the bus, 100 or 120 feet away, and the child was not with her, as the driver saw when he moved the bus.

If those were the facts, and the jury had a right to say they were, then this child, for that interval unattended, had not alighted in a place of safety and was still a passenger, to whom the defendant still owed a high degree of care. That being true, it is not open to dispute that the defendant did not perform that duty when its driver started the bus without giving any thought to the child, or giving the grandmother time to see where he was.

The defendant complains, also, of the refusal of two

instructions it offered which would have told the jury that the plaintiff could not recover if the death of the child was a mere accident, or purely accidental, relying on *Atlantic Coast Line R. Co. v. Caple,* 110 Va. 514, 66 S. E. 855.

It is true it was there held to be error to refuse an instruction that if the plaintiff was injured "as a mere accident" the jury must find for the defendant, and to qualify it by adding after the word "accident" the words "not caused in any manner by defendant's fault or negligence." The court said the qualification was well calculated to confuse and mislead the jury, if not to defeat the purpose of the instruction; that there was ample testimony to support the theory of the defendant that the death of the decedent was the result of a mere accident and the defendant was entitled to a proper instruction submitting that theory. *Richmond Traction Co. v. Martin,* 102 Va. 209, 212, 45 S. E. 886, was cited in support of the ruling. The error causing reversal in the *Martin Case,* as the opinion states, consisted in instructing the jury on one theory of the case and ignoring the other. In *Southern Ry. Co. v. United States Cas. Co.,* 136 Va. 475, 486, 118 S. E. 266, 270, the *Caple Case* was criticized and its ruling on instructions in one particular was rejected as going too far.

Technically the instruction refused in the *Caple Case* was accurate and the qualifying phrase redundant. An accident is an unforeseen event occurring without the will or design of the person whose mere act caused it, and in its strictly proper use the word itself excludes negligence. Black's Law Dictionary, 3rd ed., p. 23; Webster's New International Dictionary, 2d ed., unabridged, p. 14.

But in its practical, everyday use, in this day when injuries by motor vehicles are of hourly occurrence, accident is commonly used to describe any injury which happens without design; and the defendant's instructions telling the jury that the plaintiff could not recover if the occurrence was a mere accident, could have been understood by the jury to mean that the plaintiff could not recover if the act was unintentional. We see no good reason for requiring

an instruction to be given which, though technically correct, may be misleading, if the same principle is made clear by other instructions.

Here the jury were properly instructed as to the degree of care required of the defendant and that the plaintiff was required to prove by a preponderance of evidence that the driver of the bus was guilty of negligence which was a proximate cause of the injury. We think they were adequately instructed.

We find no reversible error and the judgment complained of is affirmed. However, the verdict and judgment fail to direct how the amount recovered shall be distributed (Code, 1950, sec. 8-638), and the case is remanded for that purpose. *Hoffman* v. *Stuart*, 190 Va. 880, 886, 59 S. E. (2d) 94, 97; *Interstate Veneer Co.* v. *Edwards, ante*, pp. 107, 118, 60 S. E. (2d) 4, 10.

*Affirmed and remanded.*