# Richmond

### SARAH EGGLESTON v. BROADWAY-MANHATTAN TAXICAB CORPORATION AND S. C. LAWRENCE.

January 26, 1953.

Record No. 4030.

Present, Eggleston, Buchanan, Miller, Smith, and Whittle, JJ.

The opinion states the case.

*Louis B. Fine, Howard I. Legum,* for plaintiff in error.

*Rixey & Rixey, E. Pryor Wormington, Earl W. White,* for defendants in error.

MILLER, J., delivered the opinion of the court.

Sarah Eggleston, plaintiff in the trial court and here so designated, instituted action for damages for personal injuries against the Broadway-Manhattan Taxicab Corporation and S. C. Lawrence. She was the only witness to testify at the trial. At the conclusion of her testimony both defendants moved to strike

her evidence on the ground that it conclusively showed that she was guilty of contributory negligence. Their motions were sustained; and no other evidence being introduced, verdict was returned in favor of the defendants, upon which judgment was entered. We subsequently granted writ of error.

Plaintiff contends that her testimony does not convict her of contributory negligence as a matter of law and that she should have been allowed to submit her case to the jury. This contention requires that the material part of that testimony be set out in detail.

The accident in which plaintiff was injured happened on Corprew Avenue in the city of Norfolk on Sunday, September 23, 1951, about four o'clock in the afternoon. The facts and circumstances attending the mishap, and the precise manner in which plaintiff was injured, are shown by her testimony to have been as follows: Corprew Avenue extends in an easterly and westerly direction, and Community Hospital is located on its south side. Six persons, including plaintiff, desired to go to the hospital. They boarded a cab, owned and operated by the defendant corporation. Two of the passengers occupied the front seat to the right of the driver; three other passengers occupied the rear seat with plaintiff, two seated on her left and one on her right. The cab was equipped with four doors, the two rear doors being hinged so that they swung toward the front when opened.

The cab proceeded west on Corprew Avenue and consequently approached the hospital traveling along the north side of the street. When it reached a point opposite the hospital, there were four cars parked on Corprew Avenue immediately in front of the building. Two were properly parked, one in front of the other, on the south side of the street facing east, and the other two were correctly parked on the north side of the street facing west. The exact width of Corprew Avenue is not given, but it is shown to have been sufficiently wide for four cars to stand abreast and still leave a few feet of clearance. However, with cars parked next to the curb on both sides of the street, the passageway between the north and south curb lines was correspondingly and considerably narrowed.

When the cab arrived in front of the hospital, it "parked double"; that is, it stopped just to the left of the most westerly of the two cars that were standing on the north side of the street. But it left about a foot or two of clearance between it and the

car immediately on its right. While the cab was thus standing, the six passengers undertook to alight. The driver did not leave his seat, but the two passengers who occupied the front seat alighted on the right; that is, they opened the right front door and got out between the cab and the car parked next to the north curb. The passenger seated immediately on plaintiff's right opened the right rear door and also alighted on that side. Though there was enough room between the cab and the car on its right to allow these passengers to alight on that side, plaintiff said "they had to squeeze to get out." The two passengers on plaintiff's left opened the left rear door and thus alighted on the street side. When these two passengers stepped from the cab into the street, the left rear door "swung shut" but "did not close,"—that is, it did not latch. It thus appears that plaintiff, who was the only passenger then left in the cab, could have alighted on either side. She, however, elected to alight on the left or street side of the cab. To do so she pushed open the left rear door that had just swung shut. As she was getting out of the cab, Lawrence, who was operating a car eastwardly along Corprew Avenue, undertook to drive through the narrow space between the double-parked cab and the cars standing on the south side of the street. His car struck the cab door which plaintiff had just pushed open and knocked it shut against her foot and leg which she had thrust out of the door.

Plaintiff thus described what she did and what happened. She said she was carrying a vase of flowers in her hand, and that as she pushed the left door open she "looked to see, but the cab driver, he blocked my view because he was sitting right in the front seat," and "I could not very well see for him." At that moment, that is, as the door swung open, it was struck by the eastbound car which she did not see until it actually hit the door. In answering questions on cross-examination as to how she undertook to alight and what effort she made to ascertain if any cars were approaching, she testified as follows:

"Q. You knew that cars came by that side, didn't you?

"A. I wasn't thinking about no cars."

*   *   *   *   *   *

"Q. And you say you pushed that door open, not knowing it was close and not knowing whether anything was coming or not, and just about the time you pushed the door open and put your

foot down there, the door got hit and mashed your foot, didn't it, or mashed your leg?

"A. Yes.

"Q. Isn't that right?

"A. Yes.

"Q. And you never saw this car that struck the door until after the accident?

"A. After it hit, I looked and I didn't see anything coming.

"Q. But you did not see it, did you?

"A. I did not see it. He was sitting in front. It looked like he could have seen it. He was sitting in front of me."

When the trial judge heard argument on the motions to strike plaintiff's evidence and announced his intention to sustain them because he thought it had been conclusively shown that she was guilty of negligence that efficiently contributed to the accident, there was no claim or suggestion made by her counsel that he desired an opportunity to present other evidence that would explain plaintiff's conduct. Nor did he at any time intimate that he could present a case that would justify its submission to the jury under the doctrine of last clear chance. Hence the court decided the motions simply upon the basis of whether or not plaintiff's evidence, without more, conclusively proved that she was guilty of negligence that contributed to her injury. Had there been any indication that other evidence would be offered to explain, change or lessen the full import of what plaintiff had said, then ample opportunity to develop further the facts to be relied upon should have been granted. But the record before us is devoid of any such indication or suggestion. On the contrary, it clearly appears that plaintiff's only contention was that her testimony, standing alone, did not convict her of contributory negligence. We therefore weigh and consider her evidence as did the trial court.

Whether or not a person who is struck by a passing vehicle while he is alighting or attempting to alight from a parked car on its street side has been guilty of contributory negligence, may often present a question of fact that should be submitted to the jury.

"A person alighting or preparing to alight from an automobile on the left side into the traveled portion of the street must exercise reasonable care by looking and listening for traffic." 2A Blashfield, *Cyclopedia of Automobile Law and Practice*

(Perm. Ed.), sec. 1593, p. 534. *Tarrant, etc.* v. *Pepsi-Cola Bottling Co., et al.,* 221 N. C. 390, 20 S. E. (2d) 565.

It must be determined from the facts and circumstances of each case whether or not one so alighting from a standing car has used reasonable care. *Stricklin* v. *Rosemeyer, et al.,* 52 Cal. App. (2d) 558, 126 Pac. (2d) 665. Yet experience, daily observation and common knowledge tell us that it is, as a general rule, more hazardous to alight on the street side of a standing vehicle than from the curb or sidewalk side. Thus one who elects to alight from the street side must exercise care commensurate with the danger and hazards that may be incident to such an undertaking. The only legal rule applicable to such a situation is that when one undertakes to get out of a vehicle on the street side and upon that portion of the thoroughfare that is open to and used by other vehicles, he must observe and use that degree of care that an ordinarily prudent man would exercise under the existing circumstances. In so doing, it is incumbent upon him to exercise ordinary care to look for approaching traffic and heed such as is open to ordinary observation and dangerously near. If it be conclusively shown that he has failed in this respect and thus contributed to being struck by a vehicle moving along the street, he is barred from recovery. *Goff* v. *Borough of College Hill, et al.,* 299 Pa. 343, 149 Atl. 477. See also *Hensley* v. *Braden,* 262 Ky. 672, 91 S. W. (2d) 34, *Reams, et al.* v. *Cone,* 190 Va. 835, 59 S. E. (2d) 87.

Here it is definitely and conclusively proved that plaintiff undertook to alight from a double-parked cab on its street side directly in front of an oncoming vehicle which was then dangerously near, but which could and would have been seen by her had she looked with reasonable care. She admits that she did not effectively look for traffic that might be moving along the street, and her statement, "I wasn't thinking about no cars," furnishes clear and affirmative proof that she opened the door into the path of the oncoming vehicle without giving thought to the danger she thus incurred by that careless act. Her undisputed testimony proves that she was guilty of negligence that contributed to the accident. We find no error in the judgment of the trial court.

*Affirmed.*