# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NATIONAL CAB COMPANY, INCORPORATED v. ROSETTA BAGBY.

January 17, 1955.

Record No. 4299.

Present, Hudgins, C.J., and Eggleston, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Sands, Marks & Sands,* for the plaintiff in error.

*P. A. L. Smith, Jr.* and *Beverley H. Randolph, Jr.,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Rosetta Bagby, hereinafter referred to as the plaintiff, while alighting in the street through the left rear door of a taxicab operated by National Cab Company, Incorporated, was injured when a passing car owned by F. M. Green and driven by Harold Wilson struck the edge of the cab door, causing it to close on her hand. The plaintiff filed a motion for judgment against the National Cab Company, Incorporated, Green and Wilson, alleging that her injuries were due to the "joint and combined negligence" of the defendants. Each defendant filed grounds of defense denying negligence on its or his part and alleging that the plaintiff herself was guilty of negligence which contributed to her injuries.

The first trial resulted in a hung jury. At the second trial the plaintiff took a nonsuit as to the defendants Green and Wilson and recovered a verdict and judgment of $1,500 against National Cab Company, Incorporated, which are before us on a writ of error granted to that defendant.

There are a number of assignments of error, but under the view we take of the case it is necessary that we discuss only that assignment which challenges the sufficiency of the evidence to sustain the verdict. The specific contention is that the plaintiff was guilty of contributory negligence which bars her recovery. In our opinion she was.

The underlying facts are not in dispute. The driver of the taxicab was not present at the second trial and the account of how the accident occurred comes mainly from the testimony of the plaintiff herself. The plaintiff testified that on Sunday, January 27, 1952, about 3 p. m., she entered a taxicab of the defendant to be transported from her place of employment on North Sheppard street to her home at 210 South Randolph street, in the city of Richmond. After discharging two other passengers the cab proceeded northwardly on Randolph street until it arrived opposite the plaintiff's home on the west side of the street, which she pointed out to the driver. Randolph street is a narrow street, twenty feet wide from curb to curb, and parking is permitted only on the east side.

When the cab arrived opposite the plaintiff's home two other cars were parked next to the eastern curb, but there was ample proper parking space ahead of these vehicles. After the plaintiff had pointed out her destination to the driver he stopped the cab in the street along side of and about fourteen inches from one of the cars which was parked against the eastern curb. The plaintiff, who was sitting on the left rear seat, paid her fare to the driver who turned his attention to "writing on his card" and made no move toward opening the door for his passenger or assisting her to alight from the cab. Seeing, as she said, that she could not leave the cab through the right rear door, and without protesting to the driver, she attempted to open the left rear door, intending to leave the cab on that side. She could not get the left door open and remarked to the driver, "I can't open this door." Without leaving his seat the driver reached around and opened the left rear door. As the door swung open the plaintiff caught hold of the door frame with her left hand "to pull up by." As she said, "I was fixing to get out of the cab when he pushed the door open, but I never got off the seat;" "I didn't see no car coming, but all of a sudden, it seemed that the minute when he pushed the door open this car comes on and hits the door, and I had my hand out like that on the door (indicating), and when he hit the door it came back and caught my fingers." It turned out that the left door handle of the southbound Green car had struck the open cab door, causing it to shut on the plaintiff's hand.

The cab door is from three and one-half to four feet wide and is hinged on the forward door post. The Green car was being driven at from twelve to eighteen inches from the western curb and thus when it reached the cab the combined width of the Green car, the cab and the vehicle parked along the western curb occupied the greater portion of the street.

An ordinance of the city of Richmond provides in part: "No passenger shall enter or leave any taxicab by way of the left rear door or side thereof except on one way streets when such vehicle is stopped on the left side of said street

for the purpose of taking on or discharging a passenger and on publicly owned parking lots; nor shall any driver knowingly or wilfully permit any passenger to enter or leave a taxicab by said door except as otherwise herein provided."

When asked on cross-examination whether she knew "it was a dangerous thing to get out of a car like that, on the traffic side," her reply was, "I reckon I did, but I wasn't thinking about that at the time." Further, she said, she "didn't particularly look" for passing traffic as she started to get out of the cab and did not see the Green car "until it hit the door." But, she said, if she had looked she could not have seen the approaching Green car because the cab driver was sitting immediately in front of her and blocked her view of that vehicle.

The sufficiency of the evidence to establish the negligence of the cab driver is not challenged. But his negligence, as culpable as it was, did not relieve the plaintiff of the duty of exercising ordinary care for her own safety. In *Eggleston* v. *Broadway-Manhattan Taxicab Corp.*, 194 Va. 584, 74 S. E. (2d) 212, we dealt with a strikingly similar situation. In that case, while a woman passenger was undertaking to alight through the left door of a double-parked taxicab, in the daytime, she was injured when a passing vehicle struck the cab door, causing it to shut on her foot. There, as here, the passenger testified that as she undertook to get out of the cab she was not "thinking about" passing traffic, and that because she was seated immediately behind the driver her view of the on-coming vehicle was obstructed until the moment of the impact. In that case we held that the passenger plaintiff was guilty of contributory negligence as a matter of law, in that she was not keeping an effective lookout for the on-coming car which was dangerously near as she alighted from the cab. We there pointed out that experience, observation and common knowledge "tell us that it is, as a general rule, more hazardous to alight on the street side of a standing vehicle" than on the side adjacent to the curb, and that one who elects to alight on the street side of a vehicle "must exercise care commensurate with the danger

and hazards" incident to such an undertaking. 194 Va., at page 588, 74 S. E. (2d), at page 214.

While the conduct of the cab driver in the present care is more culpable than that of the driver in the *Eggleston* case, the principles stated in that case govern the determination of whether the plaintiff in the present case was guilty of contributory negligence. In the present case the plaintiff elected to leave the cab through the left rear door by attempting to open it. It is true that when she was unable to do so the driver opened the door for her and she accepted his invitation to leave the cab "by way of the left rear door," in violation of the ordinance. Despite her admitted knowledge of the danger incident to this situation, we have her further admission that she "wasn't thinking about" passing traffic and "didn't particularly look" for it. Since, as she says, the collision occurred as soon as she put her hand in the doorway, the on-coming car must then have been dangerously near and plainly visible to her had she looked effectively.

It is argued that the present case is distinguishable from the *Eggleston* case in that there the passenger, when injured, was actually leaving the cab and had thrust her foot through the open doorway, while in the present case the passenger plaintiff had not left her seat and was merely preparing to leave the cab. But in the present case the plaintiff admitted that at the time of the collision she was "in the act of getting out of the left door" of the cab. Moreover, the incontrovertible physical facts show that her conduct had passed the point of mere preparation to leave the cab. The door was open, and to assist herself in getting out of the cab she exposed her hand in the doorway, with the inevitable result that it was crushed by the closing door. Thus in each case the passenger plaintiff, while alighting through the left rear door of a cab in the street, exposed her limb or hand to the hazard of being crushed by the closing door when struck by a passing car. In each case the plaintiff admitted that she was not keeping an effective lookout for the passing vehicle which must have been dangerously near.

For these reasons we are of opinion that in the present

case the plaintiff was guilty of negligence which proximately contributed to her injuries and bars her recovery. Accordingly, the judgment under review is reversed, the verdict set aside, and a final judgment will be entered here for the defendant.

*Reversed and final judgment.*

BUCHANAN AND SMITH, JJ., dissenting.

BUCHANAN, J., dissenting.

According to the evidence this plaintiff was not injured "while alighting in the street." The undisputed evidence is that when she was injured she was still in her seat and had not put a foot out of the cab.

The defendant owed to her, a passenger in its cab, the duty of exercising the highest degree of care for her safety, including the duty of providing for her a safe place to alight. *Tri-State Coach Corp* v. *Stidham*, 191 Va. 790, 62 S. E. (2d) 894.

The defendant did not perform that duty to this passenger. On the contrary it was guilty of inexcusable negligence resulting in her injury. With plenty of room immediately ahead to stop at the curb so the plaintiff could get out on the right, this driver chose to stop beside the parked car and so close to it that the plaintiff could not get out on the right side. Not only so, but with complete unconcern for her safety he opened the door on her left and tacitly invited her to get out on that side right in the path of an approaching car which he was bound to have seen if he had looked and which she did not, and as she said could not, see from her sitting position behind him. She had a right to rely on his implied assurance that it was safe for her to get out, at least to the point of putting her hand on the door frame and pulling herself up to where she could see. When she was injured after having done no more than that, I do not think it can be justly said as a matter of law, contrary to what the jury with the approval of the court below have said was

the fact, that she was guilty of negligence which contributed to her injury and now bars her recovery.

Surely it ought not to be said that she violated the city ordinance. That ordinance provided that she should not "leave any taxicab by way of the left rear door." She could not have violated that ordinance by remaining in her seat in the cab, which was her position when she was hurt. The same ordinance provided that the driver should not knowingly or wilfully permit her to leave by that door. Even this driver, if prosecuted under the ordinance for what he did here, could rely with complete assurance on the defense that he did not knowingly permit her to leave when she did not leave.

Our decision in *Eggleston* v. *Broadway-Manhattan Taxicab Corp.*, 194 Va. 584, 74 S. E. (2d) 212, very clearly, in my opinion, does not require us to hold that the present plaintiff was guilty of negligence as a matter of law. In that case, as stated in the opinion, the plaintiff "could have alighted on either side" of the cab, but she "elected to alight on the left or street side of the cab." In doing so, "she pushed open the left rear door that had just swung shut," and the passing car struck the cab door "and knocked it shut against her foot and leg which she had thrust out of the door."

There the plaintiff herself opened the door and was getting out, and had partially got out, right in the path of the approaching car which she should have seen but "which she did not see until it actually hit the door."

Here the plaintiff was not in the act of getting out when she was hurt. She was still in her seat in the cab. She had not, as she testified, even started out of the cab. The driver opened the door and in effect invited her out. She had done no more than place her hand on the frame preparatory to getting up. She said, "I was fixing to get out of the cab when he pushed the door open, but I never got off the seat."

She said she had never had a cab to stop like that before. When it did, she "went to open the door" on the right, but

did not because she saw she could not get out on that side. She then tried the door on the left and told the driver she could not open it. He reached back, did something to the door and it came open. She put her hand on the door frame and in that minute the door was struck by the passing car. That the accident happened before she even had time to look was shown by the testimony of the driver of the Green car, a witness for the defendant, who said that he did not see the door open. "It hit me as I was going past, the door flew open and hit my door."

The plaintiff testified that she always looked "when I get out of a cab, car or anything, I look up and down the street." When she was hurt she had not had time to look. She could not see ahead from where she was sitting behind the driver, and she did not see this Green car until it hit the door.

We said in the *Eggleston* case that the only legal rule applicable to the plaintiff's situation was that she "must observe and use that degree of care that an ordinarily prudent man would exercise under the existing circumstances."

All the plaintiff did here was to put her hand on the frame of the door which the defendant's driver had opened preparatory to getting out the only way she could get out. From her sitting position in the cab there was no danger apparent to her in that act, particularly when done on the implied assurance of the driver of the cab that it was safe for her to get out. She ought not, in my opinion, to be convicted as a matter of law of having done what no ordinarily prudent person would have done in the situation created by the gross negligence of defendant's driver.

It was error, I think, for the trial court to refuse a continuance to the defendant because of the absence of the driver of this cab who was under recognizance to appear, and then also to refuse to allow to be read the evidence of that witness given on a former trial. I would reverse the case for that and send it back for a new trial.

Sмith, J., joins in the dissent.