# Richmond

## BIRTCHERDS DAIRY, INCORPORATED V. NELLIE RANDALL AND VIRGINIA ELECTRIC AND POWER COMPANY.

December 7, 1942.

Record No. 2579.

Present, Campbell, C. J., and Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*H. M. Woodward,* for the plaintiff in error.

*T. Justin Moore, Archibald G. Robertson, L. S. Parsons* and *A. A. Bangel,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

Nellie Randall, while a passenger in a bus operated by the Virginia Electric & Power Company, was injured when that vehicle collided with a truck operated by Birtcherds Dairy, Inc. She sued and recovered a verdict against the operators of both vehicles for damages for her injuries. The trial court, being of opinion that the driver of the bus was not guilty of any negligence which proximately caused the collision, set aside the verdict against the Virginia Electric & Power Company and entered final judgment in its favor. It sustained the verdict against Birtcherds Dairy, Inc., and entered judgment thereon.

This judgment is before us on a writ of error granted to Birtcherds Dairy, Inc. Its main contention is that under the evidence presented and the court's instructions the jury was warranted in finding that the drivers of both vehicles were at fault, and that, in any event, judgment should have been entered accordingly. It also contends that if the jury had been properly instructed it might have found that the driver of the bus was solely responsible for the collision.

The accident occurred in the daytime at or near the intersection of Gosport road and Beach street, in the city of Portsmouth. Gosport road runs east and west and is one of the main highways leading out of the city. The central portion of the highway is paved with concrete sixteen feet wide, flanked on each side by dirt shoulders six feet wide. A ditch approximately six feet wide and from two to three feet deep runs along the southern side of this highway. Beach street enters Gosport road from the south but does not cross it. Its surface is paved with macadam to a width of about twenty-

five feet. It had been raining shortly before the collision and the surface of the pavement was wet.

At the time of the collision the truck of Birtcherds Dairy, Inc., was being driven eastwardly along Gosport road toward the intersection. The bus, with a number of passengers and in charge of a driver who had traveled the route for five years, came north on Beach street and stopped about six feet south of the Gosport road pavement. He then put his vehicle in second gear and proceeded to make a left turn into Gosport road, intending to go west along that highway. But before the bus had completed the turn its left rear was struck by the left front of the eastbound dairy truck. At the time of the collision the dairy truck was in its proper lane, which had not been cleared by the rear of the bus. There was no other traffic on either road to complicate the situation, and each vehicle was in plain view of the operator of the other as they approached the intersection. These are the undisputed facts.

The other material facts are highly controverted. The driver of the dairy truck testified that he was traveling toward the intersection at from twenty-five to thirty miles per hour, the speed of his vehicle being limited by a governor to a maximum of thirty miles per hour; that when he was about fifty feet from the intersection he saw the bus slow down and come to a stop and thought that it was going to let him pass, but when he was only about ten feet away it "swung out" in front of him, cutting the corner of the intersection in making the left turn; and that he cut his truck sharply to the right but was not able to avoid the collision.

The bus driver testified that when he came to a stop before entering the intersection, he saw the dairy truck which was then some 400 to 450 feet away; that he was then unable to judge its speed but thought that he had ample time to complete the turn; that he put the bus in second gear and started through the intersection at a speed of about eight miles per hour; that when the dairy truck was from 100 to 150 feet away he realized that it was approaching at a rapid speed; that he tried to avoid the collision by completing the turn;

but that before the rear of the bus could clear the eastbound lane on Gosport road the collision occurred.

The bus operator admitted that in making the left turn his vehicle did not go around the intersection of the medial lines of the two streets, but claims that due to the angle of the intersection, the length of the bus, and the narrow pavement on Gosport road, it was impossible for him to have made the turn in this manner. This is not disputed.

Neither the plaintiff nor any of the other passengers in the bus testified as to how the collision occurred.

One witness, called by the Virginia Electric & Power Company, testified that the dairy truck was 200 feet away when the bus entered the intersection, and that the truck was proceeding at a speed of more than thirty-five miles per hour. On the other hand, a pedestrian, called as a witness for Birtcherds Dairy, Inc., testified that the dairy truck "was not going fast" as it approached the intersection, and that the bus came into Gosport road when the other vehicle was only from 75 to 80 feet away.

Birtcherds Dairy, Inc., admits that the jury had the right under the evidence and the court's instructions to find that the driver of its truck was negligent. But it insists, also, that the jury had the right to find that the driver of the bus was guilty of negligence which proximately caused or contributed to the accident.

The Virginia Electric & Power Company contends that under the principles laid down in *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652, and subsequent cases, Birtcherds Dairy, Inc., can make out no stronger case than is embodied in the testimony of the driver of its truck; that the driver's testimony that the large bus, proceeding in low gear, came into the intersection when the vehicles were only ten feet apart, and yet almost completed its left turn at a slow speed before the collision, is contrary to known physical facts, is incredible, and should be discarded *in toto;* and that when this is done there is no proof of the negligence of the driver of the bus.

There are several answers to this contention. In the first place, the principles laid down in *Massie* v. *Firm-*

*stone, supra,* in which we held that a party is bound by his own testimony given at the trial, apply to a litigant himself and not to a witness offered by the litigant. Here the driver of the dairy truck is a mere witness and not a litigant.

In the next place, the testimony of the driver of the truck was not binding on the injured passenger, who was the plaintiff below. She is entitled to the benefit of the testimony of any witness so long as it is not in conflict with her own. Since she did not undertake to relate how the accident occurred there was no conflict between her testimony and that of any other witness. So far as she was concerned the jury was not bound to accept *in toto* the account of the accident given by the driver of either vehicle. It had the right to find that the collision did not occur in the precise manner detailed by either driver; that the statements of both of these witnesses, as to the distances and the speed of the dairy truck, were mere estimates; and that from a consideration of all of the evidence the two drivers were guilty of concurring negligence which proximately caused the accident.

As we have said, Birtcherds Dairy, Inc., admits that the evidence was sufficient to sustain a verdict that its driver was guilty of negligence which proximately caused the accident. The bus driver, being the operator of a vehicle of common carriage, owed his passengers the highest degree of care. *Chesapeake Ferry Co.* v. *Cummings,* 158 Va. 33, 36, 164 S. E. 281, 82 A. L. R. 790, and authorities there cited. He had driven over the route for five years and was entirely familiar with the conditions at the intersection and the difficulty of making a left turn there. The approaching dairy truck was in full view when he undertook to drive his bus through the intersection. According to his own testimony he discovered too late that it was approaching at a rapid speed. While he contends that the dairy truck was from 100 to 150 feet away when he drove into the intersection, Elliott, a near-by pedestrian and a disinterested witness, says that the vehicles were then only "a little ways" apart, "around 75 to 80 feet." Certainly, the jury had the right to infer from this testimony that the driver of the bus was not exer-

cising the highest degree of care for the safety of his passengers in undertaking to execute an admittedly difficult left turn into the arterial street under these circumstances.

We agree with the Virginia Electric & Power Company that under the statute (Michie's Code of 1936, section 2154(121); Acts 1932, ch. 342, pp. 613, 653, section 74) the driver of a vehicle, in making a left turn, is not required to go around the intersection of the medial lines of two streets where it is physically impossible to do so, as the uncontradicted evidence shows was the situation here. The language is, "Drivers of vehicles, * * * when turning to the left, shall pass beyond the center of the intersection, and *as closely as practicable* to the right of the center of such intersection before turning such vehicle to the left; * * * ." (Italics supplied.)

But the physical facts here show that the bus driver drove through the intersection at an oblique angle, that the front of the bus had proceeded fifty feet beyond the intersection and yet the rear of the vehicle had not cleared the eastern half of the pavement on Gosport road and the lane in which the dairy truck was traveling. In other words, the operator drove his bus on the left side of Gosport road for a distance of more than fifty feet.

Even if it be true that it was physically impossible for the bus to have gone to the right of the intersection of the center lines of the two streets, the jury had the right to infer from the physical facts that the driver could and should have made the turn in such a manner as to have cleared sooner the lane of travel of the dairy truck. The statute, as we know, requires one to drive on the right side of the highway "unless it is impracticable" to do so. Michie's Code of 1936, sec. 2154(112); Acts 1932, ch. 342, pp. 613, 652, sec. 65.

On the whole we think it was a question for the jury and not for the court to say whether the bus driver was or was not guilty of negligence which proximately contributed to the collision.

Birtcherds Dairy, Inc., assigns error to the granting and refusing of certain instructions, and contends that if the jury

had been properly instructed it might have found that the driver of the bus was solely responsible for the collision. It is not necessary that we review these assignments in detail. In our opinion the jury was fully and fairly instructed and reached the proper verdict under the evidence submitted.

The judgment against Birtcherds Dairy, Inc., is affirmed. The judgment in favor of the Virginia Electric & Power Company is reversed, and judgment is entered against it in favor of the plaintiff below on the verdict. The costs will be divided between the judgment debtors. *Richmond Coca-Cola Bottling Works* v. *Andrews*, 173 Va. 240, 252, 3 S. E. (2d) 419, 424.

*Affirmed in part.*
*Reversed in part.*