# Richmond

VIRGINIA TRANSIT COMPANY v. JEANETTE TIDD AND ANOTHER.

December 1, 1952.

Record No. 3985.

Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Anderson, Gay & Moore, T. Justin Moore, Jr.* and *Ralph H. Ferrell, Jr.,* for the plaintiff in error.

*William Old* and *M. Wallace Moncure, Jr.,* for the defendants in error.

SMITH, J., delivered the opinion of the court.

Jeanette Tidd sued the Virginia Transit Company and a city of Richmond police officer named Thomas A. Conway, Jr., seeking to recover $25,000 for personal injuries resulting from a police car—bus collision. The jury returned a verdict in favor of Mrs. Tidd against the Virginia Transit Company in the sum of $12,500 and exonerated Conway of all liability.

The transit company made a motion to set aside the verdict

relieving Conway of liability and requested that judgment be entered against both defendants; also, to set aside the verdict because the trial court granted certain instructions for Conway and refused other instructions requested by the transit company. The trial court overruled the motion and entered judgment on the verdict to which judgment we granted the Virginia Transit Company a writ of error.

The motion made presents three questions for decision which were properly raised by the motion to set aside the verdict and the objections and exceptions to the tendered instructions. See Code, § 8-225.

(1) Was the transit company guilty of negligence which proximately caused or efficiently contributed to the plaintiff's injury?

(2) Under Virginia law may a police officer drive through an intersection when the traffic light is red against him?

(3) Was the co-defendant Conway guilty of negligence as a matter of law?

On February 25, 1950, Mrs. Tidd was a passenger on a bus owned by the transit company and driven by T. R. Owen. Conway was a member of the police force of the city of Richmond assigned to the accident squad. Shortly before 8 o'clock that morning, Conway and two other officers were directed to make an investigation of an automobile accident at Second and Broad streets. The three officers left the police parking lot at Eleventh and Broad streets in separate cars with Conway in the lead.

With his police siren blowing and the red light on his car blinking, Conway proceeded west on Broad street toward its intersection with Second street. He had a green traffic light in his favor at each intersection until he reached Fifth and Broad streets where the traffic light was red against him. Conway slowed down and the light changed to green, so he proceeded toward the intersection at Fourth street where the light was again red against him. This time, however, Conway made no effort to slow down and entered the intersection against the red light at a speed of about thirty-five miles per hour directly in front of the transit company's oncoming southbound bus which Conway had seen when he was a half a block away from the intersection.

This bus had been traveling south on Fourth street toward its intersection with Broad street. Mrs. Tidd was sitting on the

left front seat, directly behind the driver. Moving at a slow rate of speed and with the green traffic light in his favor, the bus driver entered the intersection of Fourth and Broad streets at about the same time that Conway did and the left front of the bus and the right side of the police car collided on the westbound street car tracks. The two vehicles continued on in a southwesterly direction and came to a stop on the eastbound street car tracks.

There was a conflict in the evidence as to whether the bus stopped on Fourth street before entering Broad street. By the verdict this conflict is resolved against the transit company and, if material, it must be considered that the bus moved into the Broad street intersection from a stop on Fourth street. This movement was made in the face of the oncoming speeding police car operated by Conway with its siren blowing and its red light blinking. Owen, the bus driver, testified that he did not hear the siren or see the police car until his bus was six or seven feet from the point of impact. Four witnesses, including the plaintiff, who were at or near the intersection at the time of the collision, all testified that they heard the siren and that it was "plenty loud."

Without going into the instructions in detail, we will briefly state the issue presented. The transit company by its motion did not raise any serious question regarding the instructions given on behalf of the plaintiff, but it did seriously object to the instructions given on behalf of Conway and the action of the trial court in refusing certain instructions tendered by the transit company which affected Conway. These instructions dealt with the question whether a police officer may disregard a red traffic light at an intersection. The trial court was of the opinion that Code, § 46-241 permits a police officer to disregard a red traffic light and it refused to instruct the jury that if Conway drove through a red light he was guilty of negligence.

The trial court, without objection, correctly instructed the jury that the transit company owed the plaintiff, a passenger, the duty to exercise the highest degree of practical care for her safety and that before a verdict might be found against the transit company the proof must show that the operator of the bus failed to exercise such care and that the failure to exercise such care either proximately caused or efficiently contributed to the injury of the plaintiff.

The jury was warranted in reaching the conclusion that

the bus driver failed in his duty to keep a proper lookout and see or hear the police car and that he failed to comply with Code, § 46-241 when he drove his bus from a place of safety into the intersection of Fourth and Broad streets into the path of the police car which was giving an audible signal.

Irrespective of Conway's guilt or innocence, the negligence of the Virginia Transit Company continued up to the time of the accident and was a contributing cause of the collision in violation of its duty to exercise the highest degree of practical care for the safety of its passenger, Mrs. Tidd. *Birtcherds Dairy* v. *Randall,* 180 Va. 311, 23 S. E. (2d) 229. While a common carrier is not an insurer of the safety of its passengers, it owes them a very high degree of care and is liable for the slightest negligence that such care could have foreseen and guarded against. *Tri-State Coach Corp.* v. *Stidham,* 191 Va. 790, 62 S. E. (2d) 894.

This brings us to the next question; should the jury, under all the facts and circumstances of the case, have found that Conway was guilty of negligence which likewise contributed to the plaintiff's injuries?

Code, § 46-180 provides that ''It shall be unlawful for *any person* to refuse, fail or neglect to comply with any of the provisions of this chapter.'' (Italics supplied.) The reference is to chapter 4, title 46, which includes §§ 46-180 through 46-342.

Section 46-181 states ''The provisions of this chapter applicable to the drivers of vehicles upon the highways shall apply to the drivers of all vehicles owned or operated by the State or any city, town, district or other political subdivision of this State, subject to such *specific exceptions* as are set forth in *this chapter.*'' (Italics supplied.)

Thus in Virginia the drivers of police cars, ambulances, and other State, county, and city-owned vehicles are subject to all traffic regulations *unless a specific exception is made.* Furthermore, § 46-200 of the Code provides that no city or town shall adopt any ordinances or traffic regulations in conflict with the provisions of chapter 4, title 46, of the Code.

Our next inquiry is whether there are any provisions in the Code dealing with traffic lights which make a specific exception for drivers of police vehicles. The answer is that there is none. Code, § 46-203, insofar as it is applicable to this case, provides as follows:

"* * * Red indicates that traffic then moving shall stop and remain stopped as long as the red signal is shown. Green indicates that traffic shall then move in the direction of the signal and remain in motion as long as the green signal is given. * * *"

This section was discussed by this court in *Virginia Elec., etc., Co.* v. *Holland,* 184 Va. 893, 898, 37 S. E. (2d) 40, where we said:

"* * * A red light is a command to stop, just as a green light is a command to proceed. Code, sec. 2154 (99) [§ 46-203, Code of 1950]. To fail to comply with either command not only invites accidents but also obstructs the traffic. If a traveler has the green light he is not required to stop, look and listen before crossing street car tracks at an intersection. * * *"

Conway contends that a proper interpretation of Code, § 46-241 creates an exception to § 46-203 and permits a police officer to drive through an intersection against a red light. Section 46-241 of the Code reads as follows:

"Upon the approach of any police or fire department vehicle, giving audible signal by siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position at or as near as possible and parallel to the right-hand edge or curb, clear of any intersection of highways, and shall stop and, remain in such position unless otherwise directed by a police or traffic officer, until the police or fire department vehicle shall have passed. This provision shall not operate to relieve the driver of a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right of way."

Nowhere in § 46-241 is there a *specific exception* as required by § 46-181 which relieves police officers from the duty to comply with § 46-203 relating to traffic signals. If § 46-241 creates an exception to § 46-203, it does so by implication and not by a specific exception.

It is argued that if a police car giving an audible signal cannot run through a red traffic light then we would have the ridiculous situation of escaping law violators going joyfully on their way, while the police wait for a green light. But it can just as well be argued to the contrary that the legislature was willing to take a chance on giving violators of the law a head start

rather than endanger the lives of those who rely upon the safety of a green light.

It is also contended that the legislature did not intend that all vehicles should be denied the use of an intersection where, as here, southbound traffic had the green light but could not enter the intersection because of the approaching police car giving audible signal and the police car could not enter the intersection either because the traffic light was red against it.

▪ Code, § 46-241 applies to all intersections, whether controlled by signal lights or not, and since § 46-203 was construed in the *Holland Case* to mean that a green light was a command to proceed, it must be taken as the legislative view that it is too dangerous to allow a police or fire vehicle to run through a red light on the chance that vehicles proceeding to cross the path of the police or fire vehicle with the green light might not have heard the siren or exhaust whistle signal with the resulting likelihood of accidents. This is exactly what happened in the case at bar. The bus driver said he did not hear the siren although the jury disbelieved him or thought he should have heard it and he proceeded to cross the intersection and the collision resulted. If the police are to be permitted to disregard red traffic lights, this dangerous right must be given by the legislature and not by this court.

▪ When it concluded that the speed laws should not control the operators of certain vehicles under certain circumstances, the legislature enacted Code, § 46-216 which permits police officers in the chase or apprehension of violators of the law to exceed the general speed laws. The fact that the legislature saw fit to make a specific exception in this instance is an added reason why no implied exception may be read into § 46-203 in order to permit police officers to run through red lights. It must also be noted that the effect of Code, § 46-216 is restricted to "the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violations." Section 46-241 does not contain this restriction and if this section has the effect that Conway contends it has, then a police officer, even in the performance of the simplest duty or on his way home, could ignore all traffic lights by the simple expedient of turning on his siren.

Many cases have been cited by counsel on the question whether favored or privileged cars, such as police or fire depart-

ment vehicles and ambulances, are entitled to disregard red traffic lights, but we find that these cases are not helpful because they are controlled by statutes which are different from those with which we are herein concerned.

If the General Assembly had desired to permit drivers of police vehicles, under certain circumstances, to drive through red traffic lights, it would have done so or it can now do so. It is not the function of the court to legislate or to use the office of construction to amend plain statutes. As the Supreme Court of New Jersey stated in *Knox* v. *North Jersey St. R. Co.,* 70 N. J. L. 347, 57 A. 423, a similar case dealing with fire engines:

"It may be conceded that the importance of having a fire engine or truck reach its destination as speedily as possible makes it advisable that it should be given superior right in the public streets, and that trolley cars and other vehicles should be required to yield it the right of way *at street crossings. * * * It is not within the power of the courts to confer it by judicial decision.".* (Italics supplied.)

■ Since there is nowhere in the Code a "specific exception" which excludes police vehicles from the application of the provisions of § 46-203, dealing with traffic lights, that section applies to the driver of the police car in the instant case, and Officer Conway was negligent as a matter of law in failing to stop for the red traffic light at Fourth and Broad streets.

■ Upon all the facts and circumstances of the case it is our opinion that the operator of the bus and the driver of the police car were both guilty of concurring negligence which proximately caused the injury to the plaintiff. The verdict of the jury which exonerated the defendant, Conway, from liability was contrary to the law and the evidence and must be set aside.

■ The action we should take in this case is dictated by *Richmond Coca-Cola Bottling Works* v. *Andrews,* 173 Va. 240, 3 S. E. (2d) 419. In that case Mr. Justice Eggleston, in an able opinion, reviewed the cases and set forth the reasons why this court should proceed to enter final judgment against both joint tort feasors, when their negligence has concurred in producing a single indivisible injury and the verdict has fixed the plaintiff's damages.

Therefore, the verdict and judgment in favor of Conway will be set aside and judgment against him and the Virginia Transit Company, as joint tort feasors, will be entered here. The costs will be divided between the Virginia Transit Company and Con-

way.  *Birtcherds Dairy* v. *Randall, supra; Richmond Coca-Cola Bottling Works* v. *Andrews, supra.*

*Affirmed in part, reversed in part, final judgment.*

HUDGINS, C. J., dissenting.

I am unable to agree with that part of the majority opinion which holds that the driver of a police department vehicle is guilty of negligence for failure to stop at a red light signal.

When the different sections of the Motor Vehicle Code are considered together, as they should be, they reveal a clear legislative intent to recognize the paramount public necessity of providing a clear and speedy pathway for drivers of police department vehicles when in chase or apprehension of violators of the law. The statute does not give such drivers the absolute right of way. They are not relieved of the consequences ''of a reckless disregard of the safety of others.'' (Code 1950, sec. 46-216). They are required to give proper and audibile warning of their approach so that other users of the highways may have a reasonable opportunity to yield the right of way by clearing the intersection and stopping their vehicles at or as near as possible and parallel to the right-hand curb.

If, on the approach of police department vehicles giving audible signals by siren, other users of the highway are prohibited from going forward on the green traffic light, and a police officer in chase of violators of the law is required to stop on a red light at the same intersection, no one can lawfully enter the intersection from any direction during the interval between the change of traffic signals. Such a situation is absurd. It is a hindrance rather than an aid to police officers and firemen in the discharge of their duty on emergency calls.

The driver of a police department vehicle should be held guilty of negligence if the evidence shows that he failed to keep a proper lookout, under the circumstances, or failed to give adequate warning of his approach, or otherwise recklessly disregarded the rights of others. He should not be held guilty of negligence, as a matter of law, simply because he failed to stop at an intersection on a red light signal.