**UTILITY CONTROL CORPORATION,
Appellee,**

v.

**PRINCE WILLIAM CONSTRUCTION
CO., INC. and B. Calvin Burns,
Appellants.**

**No. 76–1890.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 17, 1977.

Decided July 8, 1977.

---

Richard R. Nageotte, Woodbridge, Va. (Robert J. Zelnick, Nageotte, Borinksy & Zelnick, Woodbridge, Va., on brief), for appellants.

James E. Farnham, Richmond, Va. (Jack E. McClard, Hunton & Williams, Richmond, Va., on brief), for appellee.

Before WINTER, CRAVEN,* and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Utility Control Corporation (Utility) sued Prince William Construction Company (Prince William) and B. Calvin Burns for payments due under a contract pursuant to which Utility supplied electronic controls for a vacuum sewage system being constructed by Prince William. Burns, who was treasurer of Prince William, was joined as a party-defendant because he, along with Prince William, signed the contract. At trial, the district court granted summary judgment for Utility Control after it had examined its first witness, the former president of Prince William. The trial continued as to Burns and the jury found him also liable to Utility Control as a guarantor. Prince William and Burns both appeal, asserting numerous errors. We reverse and grant both a new trial.

## I.

For the purpose of our decision, we need not recite all of the facts. The following suffices:

Prince William was the general contractor for construction of the sewage system at Lake of the Woods, a recreational area in Virginia. It employed Utility Control for the design and installation of the electronic controls. A formal contract between the parties was executed on October 1, 1969, but work on the system had been started previously. As originally drafted, the contract was by and between Utility Control and Prince William, but Burns' name was inserted in the opening language of the contract as one of the contracting parties and he signed the document under the execution by Utility Control and Prince William.

The sewage system was a prototype model and there were operational difficulties. Utility Control sent personnel to the site and various equipment was replaced, but apparently the system did not work satisfactorily until Prince William employed a third party to make it operational. As work progressed, Prince William was delinquent in paying invoices and a large number of them were unpaid when suit was instituted.

In the district court, nonpayment by Prince William was undisputed. The principal issue was whether, under the Commercial Code (Va.Code § 8.2–607(3)(a) (1965 added vol.)), Prince William, having accepted the goods, had given Utility Control sufficient notice of a claim of breach of warranty to preserve Prince William's rights to assert a counterclaim and set-off by reason of breach of warranty.

Prior to trial, no party moved for summary judgment. When the trial began, Utility Control called as its first witness Grover W. Taylor, former president of Prince William. He was examined as an adverse witness; and when his direct examination was complete, Utility Control moved for summary judgment. Prince William's counsel objected and requested that he be given at least the opportunity to examine Taylor. The district court denied the request. The district court also ignored the representation by counsel for Prince William that, if given the opportunity, he could produce other evidence in support of Prince William's defense. Relying upon *Massie v. Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), it held that Prince William was bound by the statements in discovery depositions taken by Utility Control and in Taylor's direct testimony, that that evidence showed that there was no genuine issue of any material fact with respect to Prince William's liability and that therefore Utility Control was entitled to judgment as a matter of law.

Summary judgment as to Burns was denied because the district court perceived a

---

* Although Judge Craven died before this opinion was prepared and submitted to him, he had voted to reverse the district court's judgment and he had expressed agreement with the opinion's principal holdings.

factual dispute as to the capacity in which Burns had executed the contract, whether as a co-principal or as a guarantor. The trial continued as to him and, over his objection, evidence was introduced that on another unrelated occasion he had indisputably executed a contract by and between Prince William and Virginia Wildlife Clubs, Inc. as guarantor for Prince William. The jury's special verdict was that Burns had signed the contract in the instant case as guarantor. On its summary judgment as to liability and the jury's special verdict, the district court fixed damages at $77,990.14 and entered judgment with interest thereon against Prince William and Burns.

## II.

We conclude that the district court erred in granting summary judgment against Prince William.

■ Although Rule 56(a) and (b), F.R. Civ.P., states that "[a] party . . . may, *at any time*, . . . move . . for a summary judgment in his favor . . . .," it is the rare case in which summary judgment should be granted on motion made after the trial begins. *Williams v. Howard Johnson's, Inc.*, 323 F.2d 102 (4 Cir. 1963). The reason stems from Rule 56's purpose to avoid useless trials where material facts are not disputed and the law points unerringly to the conclusion that one of the parties is entitled to judgment as a matter of law. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3 Cir. 1976); *Bland v. Norfolk & So. R. R. Co.*, 406 F.2d 863, 866 (4 Cir. 1968); *Irving Trust Co. v. United States*, 221 F.2d 303, 305 (2 Cir.), *cert. denied*, 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740 (1955); 6 Moore's Federal Practice ¶ 56.-02[5], at 56–35 (1976). Sensibly, resort to Rule 56 should occur before trial begins if the purpose of Rule 56 is to be served.

■ In any event, if a Rule 56 motion is to be granted at or before trial, its procedural requirements must be satisfied. So far as pertinent here, these are that the party against whom summary judgment is sought should have ten days' notice before a hearing on the motion and that he should have the right to file affidavits prior to the date of hearing to demonstrate that there is a genuine issue as to any material fact. Rule 56(c). These procedural protections were denied in the instant case. The district court did not require Prince William to have ten days' notice of the motion; the motion was received, considered and granted on a single day. The district court did not afford Prince William the opportunity to show that there was a genuine issue as to any material fact; the district court refused to permit Prince William's counsel to cross-examine Taylor on whose testimony Utility Control heavily relied, and it declined to permit Prince William's counsel to adduce his other proofs. Although the district court heard argument on the motion and in that sense granted a hearing, the hearing was an empty gesture since Prince William's counsel had been deprived of the opportunity of presenting the factual data on which he could have been expected to rely in opposing the motion, and the hearing was set without ten days' prior notice so as to afford Prince William the opportunity to prepare his opposing proofs. *Dolese v. United States*, 541 F.2d 853, 854–55 (10 Cir. 1976); *Kibort v. Hampton*, 538 F.2d 90, 91 (5 Cir. 1976); *Johnson v. RAC Corp.*, 491 F.2d 510, 513–14 (4 Cir. 1974).

The district court justified the extraordinary procedure that it followed by reliance on *Massie v. Firmstone, supra*. The district court's theory was that, under *Massie*, Prince William, as a matter of state law which was applicable in the district court, would not be permitted to controvert Taylor's apparent admissions that Prince William's notice to Utility Control that the former would assert a counterclaim or set-off because of the latter's breach of warranty was long delayed after receipt and acceptance of the equipment and services. We doubt that, as a matter of state law, *Massie* supports this proposition under the circumstances of this case; but in any event, it is totally inapplicable to the determination of a motion for summary judgment in a federal district court.

*Massie* established a state rule of evidence that where a party testifies in court to a fact within his knowledge, he may not controvert this fact through the introduction of other evidence; that is, after the presentation of all the evidence at trial, a party's case may not rise above his own testimony where that testimony, if true, would preclude success on the merits. The principle is "that such testimony of the litigant has the force of a judicial admission." *Crew v. Nelson*, 188 Va. 108, 49 S.E.2d 326, 328, (1948); *Baines v. Parker*, 217 Va. 100, 225 S.E.2d 403, 407 (1976); *see* IX Wigmore on Evidence § 2594a (3rd ed. 1940); McCormick on Evidence § 266 (1972) (both disapproving of rule).

■ But the Supreme Court of Virginia has repeatedly stated that a party is not bound by *every* statement that is made, his testimony as a *whole* must be considered, and if reasonable men could differ on whether his testimony clearly and unequivocally put him out of court, his case must go to the jury. *Baines v. Parker, supra,* 225 S.E.2d at 407; *Crawford v. Quarterman*, 210 Va. 292, 172 S.E.2d 739, 743 (1970); *Bond v. Joyner*, 205 Va. 292, 136 S.E.2d 903, 905 (1964); *Crew v. Nelson, supra*, 49 S.E.2d at 329. *See also Norfolk Southern Bus Corp. v. Lask*, 43 F.2d 45, 48 (4 Cir. 1930). Here, Prince William was denied the opportunity to present all of its evidence in contravention of the state rule. Moreover, the Supreme Court of Virginia has not applied the *Massie* rule to a corporate party such as was done here. In *May v. Malcolm*, 202 Va. 78, 116 S.E.2d 114 (1960), the rule was held inapplicable to the testimony of a district engineer of the state highway department since he did not stand in the shoes of the highway commissioner and was only a witness and not a party-litigant. Similarly, in *Birtcherds Dairy, Inc. v. Randall*, 180 Va. 311, 315–16, 23 S.E.2d 229, 233 (1942), the testimony of a driver of a dairy truck was held not binding on the dairy company owning the truck since the driver was not a litigant but merely a witness. It is true that in *Erlich v. Hendrick Construction Co.*, 217 Va. 108, 225 S.E.2d 665 (1976), the *Massie* rule was invoked against a corporation

where the witness was the president and sole stockholder, but this was done apparently on the theory that each was the alter ego of the other. In the instant case, Taylor, when he was deposed and when he testified, was no longer Prince William's president, and he was only a minority stockholder.

■■ Since the holding in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), it has repeatedly been held that federal procedural standards govern whether summary judgment is appropriate in any case. *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7 Cir. 1976); *Northwestern Nat. Ins. Co. v. Corley*, 503 F.2d 224, 231–32 (7 Cir. 1974); *Ando v. Great Western Sugar Co.*, 475 F.2d 531, 534 (10 Cir. 1973); *Lloyd v. Lawrence*, 472 F.2d 313, 316 (5 Cir. 1973); *Lighting Fixture and Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir. 1969); *see generally* Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693, 700–06, 718–25 (1974). Those procedural standards include federal law as to the admissibility of evidence. *Northwestern Nat. Ins. Co. v. Corley, supra*.

Federal Rule of Evidence 607 states: The credibility of a witness may be attacked by any party, including the party calling him.

As the notes of the Advisory Committee and the Commentary in Weinstein's Evidence succinctly state, the effect of Rule 607 is to sweep away the traditional rule that a party may not impeach his own witness. 3 Weinstein's Evidence p. 607–3, and ¶ 607[01], at 607–7 (1976 ed.). Since Prince William would have been authorized to impeach Taylor, had Prince William called Taylor as its witness, it undoubtedly had that right when Taylor was called as a witness by Utility Control. Impeachment could have occurred, *inter alia*, by contradiction which might have been shown either by cross-examination or by contrary evidence from other sources. *Id.* ¶ 607[05], at 607–50–51.

■ Thus, under applicable federal law, Prince William had the right both to cross-

examine Taylor and to present other proofs to show that his testimony did not accurately depict the true facts. To have denied Prince William those rights was reversible error.

### III.

Because the judgment against Utility Control must be reversed, it follows that the judgment against Burns must also be reversed, or held in abeyance pending the trial of the claim against Utility Control, since he was held liable as a guarantor. It cannot be held in abeyance, however, because of a reversible error in the trial against him.

The district court permitted the jury to consider that Burns had guaranteed a contract between Prince William and Virginia Wildlife Clubs. The Virginia Wildlife contract had been executed approximately a year and one-half before execution of the Utility Control-Prince William contract. Unlike the latter, the Virginia Wildlife contract described Burns' joinder and execution as a guarantor. Utility Control was not shown to have any connection with the Virginia Wildlife contract; nor was Virginia Wildlife shown to have any connection with Utility Control-Prince William contract.

■ Presumably, the district court admitted the evidence under Federal Rule of Evidence 406 which states in relevant part that "[e]vidence of the habit of a person . . . is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit . . . ." We do not think, however, that the rule is applicable. Proof of something done in a single occasion is hardly proof of a habit. Particularly is this so when proof is lacking that the occasion on which the habit was supposedly formed and the occasion on which it is claimed that the habit was followed are related or even similar. Moreover, there was testimony that Burns did not guarantee other contracts between Prince William and Virginia Wildlife. The Virginia Wildlife contract made clear that Burns acted as a guarantor; the Prince William contract was silent as to the capacity in which he participated. The fact that Burns once previously executed an express guarantee hardly proves that thereafter he executed another contract as guarantor when the later contract fails to describe the capacity in which he joined. However, the possibility is real that the jury might have thought differently. It may well have concluded that because the court admitted the evidence, the court thought that the evidence had substantial relevancy.

■ We conclude that the evidence was not relevant, on the facts established when it was offered, within the meaning of Rule 406. Alternatively, its relevancy was so slight that we think the district court abused its discretion in failing to exclude it pursuant to Federal Rule of Evidence 403 which permits even relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of undue prejudice . . . or misleading the jury . . . ."

*REVERSED; NEW TRIALS AWARDED.*