**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGETOWN STEEL CORPORATION,
Plaintiff-Appellee,

v.

LAW ENGINEERING TESTING COMPANY,
Defendant-Appellant,

and

UNION CARBIDE CORPORATION,
Defendant-Appellee,

and

PITTSBURGH TESTING LABORATORY,
INC.,
Defendant.

No. 94-2257

GEORGETOWN STEEL CORPORATION,
Plaintiff-Appellant,

v.

UNION CARBIDE CORPORATION,
Defendant-Appellant,

No. 94-2289

LAW ENGINEERING TESTING COMPANY,
Defendant-Appellee,

and

PITTSBURGH TESTING LABORATORY,
INC.,
Defendant.

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Falcon B. Hawkins, Chief District Judge.
(CA-85-440-2-1)

Argued: November 1, 1995

Decided: November 13, 1996

Before WIDENER and HALL, Circuit Judges, and
PAYNE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael S. Seekings, ROBERTSON & SEEKINGS,
Charleston, South Carolina; Robert O'Neal Fleming, Jr., SMITH &
FLEMING, Atlanta, Georgia, for Appellant. Charles Porter,
MCNAIR & SANFORD, P.A., Columbia, South Carolina; Thomas S.
Tisdale, Jr., YOUNG, CLEMENT, RIVERS & TISDALE, L.L.P.,
Charleston, South Carolina, for Appellees. **ON BRIEF:** James B.
Moore, Jr., Robert P. Widener, MCNAIR & SANFORD, P.A.,
Columbia, South Carolina; Stephen P. Groves, YOUNG, CLEMENT,
RIVERS & TISDALE, L.L.P., Charleston, South Carolina, for Appel-
lees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Georgetown Steel Corporation contracted with Union Carbide Corporation for Carbide to build an air separation plant on premises that Carbide leased from Georgetown Steel. The plant was to provide Union Carbide with liquid oxygen and nitrogen, which it furnished to Georgetown Steel and which Georgetown Steel used in its steelmaking process. Georgetown Steel was responsible for the site preparation and hired Law Engineering Testing Company to perform soil analysis and to give engineering advice. One of Law Engineering's recommendations was that slag, a by-product of the steelmaking process, could be used as backfill material. Georgetown Steel, therefore, used slag for the foundation, and Carbide proceeded to build the plant upon the slag foundation. After Carbide completed construction, the slag expanded and caused such problems at the plant that Carbide eventually had to close the plant in 1985. Carbide began reconstruction of the plant in 1988 and reopened the plant in 1989.

This suit began in 1985 when Georgetown Steel sued Law Engineering and Pittsburgh Testing Laboratory* for negligence and breach of express and implied warranties. Georgetown Steel also sought a declaratory judgment that it was not responsible for any of Carbide's damages. Carbide filed a counterclaim against Georgetown Steel for negligence and breach of contract and express warranties, and a cross-claim against Law Engineering for negligence and breach of express and implied warranties. Georgetown Steel and Carbide settled prior to the first trial, and Carbide assigned its claims against Law Engineering to Georgetown Steel.

I.

This case is on appeal before this court for the third time, and this time the question is damages. On our second remand to the district court, we instructed the district court to enter judgment for Carbide against Law Engineering and to calculate damages. Georgetown Steel

_____

*Pittsburgh Testing Laboratory paid a judgment against it and is not a party to this appeal.

3

Corp. v. Law Eng'g Testing Co., 892 F.2d 1041 (4th Cir. 1993) (unpublished). Law Engineering now appeals the order of the district court awarding Carbide (1) the cost of reconstructing the driox system, (2) the cost of updating the air separation plant, and (3) the cost of inflation and consequential damages during a period of delay before reconstruction of the plant. Carbide, in turn, cross-appeals and claims that the district court should have awarded it the costs associated with using atmospheric vaporizers and TM-11 storage tanks in the rebuilt driox. We affirm.

II.

Law Engineering argues on appeal that the district court should not have awarded Carbide the cost of reconstructing the driox system. Law Engineering complains that Carbide took the opportunity to redesign the driox system by increasing the number of tanks in the system and by using atmospheric vaporizers as a heat source for the new system rather than the electric power vaporizers that the original driox system had. Carbide produced evidence that the driox system had to be moved in order for Georgetown Steel to excavate the slag and refill the foundation, and that the installation with atmospheric vaporizers cost less than it would have had Carbide rebuilt the driox on a different site with electric power as a heat source. The district court refused to assess the full cost of the new vaporizers and tanks against Law Engineering because the new power source was in fact a redesign. The record shows that although the new driox system contains a design change, the cost of installation was less than it would have been had the change not been made. Moreover, the court did not hold Law Engineering responsible for the cost of the change. The district court's findings of fact related to the reconstruction of the driox are not clearly erroneous and we decline to set them aside. Fed. R. Civ. P. 52(a).

III.

Law Engineering also argues that the district court should not have awarded Carbide certain costs associated with the reconstruction of the new plant. In awarding Carbide damages for costs incurred during the reconstruction, the court used actual costs incurred including safety modifications and updates. The court did not award damages

4

for spare parts that were not used in the original plant, modifications that could not be attributed to any party at fault, and design improvements that were not attributable to Law Engineering's actions. The court credited Carbide's witness who testified that such modifications and updates would not have been necessary had it not been for the reconstruction required by Law's negligence and that the plant would otherwise have operated satisfactorily for the contract period. We must give due regard to the district court's opportunity to judge the credibility of the witness. Again, we cannot say that the district court's findings are clearly erroneous. Fed. R. Civ. P. 52(a).

IV.

Law Engineering also argues that it should not be responsible for the cost of inflation or consequential damages during the period of delay between the closing of the plant and the start of reconstruction.

The plant ceased operations in May 1985, Carbide began reconstruction in April 1988, and the plant reopened in July 1989. The district court found that Carbide was responsible for 20 of the 35 months delay between the closing of the plant and the start of reconstruction because Carbide was concerned with circumstances that were not the result of Law Engineering's actions.

The court specifically found that Carbide spent several months determining whether an alternate site, off Georgetown Steel's premises, would be suitable for the reconstruction of the plant; four months unsuccessfully negotiating the acquisition of a different property site on which to rebuild the plant; another 14 months determining that rebuilding on an alternate site would not be less expensive; and additional time determining whether the new plant should be larger than the original plant. The court also found that the remaining 15 months delay was attributable to Law Engineering because Carbide reasonably spent that time preparing for reconstruction. Once again, based on our review of the record, we cannot say that the district court's findings are clearly erroneous. Fed. R. Civ. P. 52(a). Accordingly, we reject Law Engineering's argument that the district court erroneously awarded Carbide consequential damages for 15 months of delay.

The end and effect of Law's argument with respect to inflation is that it claims that the reconstruction costs should be reduced for infla-

5

tion during the period the plant was shut down until the period of reconstruction commenced.

Just as the district court awarded Carbide consequential damages for 15 months of delay, it denied a credit for inflation during the 20 month period just mentioned.

Law offered no evidence with respect to inflation and relies on a witness for Carbide who stated that inflation during this three-year period would have amounted to "about 10%." Even if we take that testimony as the fact, the most credit that Law can claim is for a 20 month period during which the district court held that Carbide did not mitigate its damages. Contrary to the argument of Law, we do not believe the district court was required to accept the 10% figure we have mentioned and to apply a 20 mo./35 mo. fraction to the 10% figure with mathematical precision to obtain credit. The argument that South Carolina law as to fact finding applies in the district court is not well taken under Erie Ry. v. Tompkins, 304 U.S. 64 (1938). On facts indistinguishable for practical purposes, we have held that Virginia law does not. Utility Control Corp. v. Prince William Const., 558 F.2d 716, 720-721 (4th Cir. 1977). See Fed. R. Evid. 607.

The district court awarded damages under South Carolina law as "the cost of repair or restoration" and as well "the loss of use."

When we consider that there was no other evidence with respect to inflation; that the district court awarded the cost of repair or restoration; and that no authority has been presented to us requiring any adjustment for inflation in these circumstances, we cannot say that the district court's finding of fact that inflation was "a small, but negligible percentage" of the restoration costs was clearly erroneous. Fed. R. Civ. P. 52(a). Along the same line, we note that the district court did not award pre-judgment interest, only that from the date of its judgment.

V.

Carbide cross-appeals and claims that the district court should have awarded it an additional $144,344 for the cost of one TM-11 storage

6

tank and 11 atmospheric vaporizers that Carbide took from it's inventory and used in the new driox. The district court did not award these damages because Carbide did not present evidence of the actual replacement costs of these items so that the court could determine with certainty the cost of the individual storage tank and the cost of the atmospheric vaporizers versus the electric vaporizers to determine what costs were attributable to Law Engineering. As noted in part II hereof, we also note that the court would not assess the full cost of the new tanks and vaporizers to Law Engineering because Carbide redesigned the power source for the driox system so that the vaporizers are atmospheric rather than relying on electricity. We cannot say the district court was clearly erroneous.

The judgment of the district court is accordingly

AFFIRMED.

7