COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Fitzpatrick
Argued at Salem, Virginia


JAMES L. PHILLIPS
                                         OPINION BY
v.        Record No. 1419-96-3    JUDGE JOHANNA L. FITZPATRICK
                                          JULY 8, 1997
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                     George E. Honts, III, Judge

          Robert C. Hagan, Jr., for appellant.

          Michael T. Judge, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.



     On May 9, 1996, James L. Phillips, a police officer, was

convicted in a bench trial of reckless driving in violation of

Code § 46.2-852.  On appeal, Phillips (appellant) contends that

the trial court erred in (1) failing to apply a "reasonable

officer" standard of care to determine his guilt, and (2) finding

the evidence sufficient to convict.  For the reasons that follow,

we affirm the judgment of the trial court.

                        I.   BACKGROUND

     On March 1, 1996, Dennis Dew (Dew) was driving north on

Route 220 in Botetourt County.  Route 220 is a two-lane road, and

the lanes are separated by a double yellow line.  Within the town

limits, the road has three passing zones, and the speed limit is

thirty-five miles per hour.  As Dew was driving, he saw several

cars, including a tractor trailer, coming toward him from the

opposite direction in the other lane.  He saw another car, going

in the same direction as the tractor trailer, "jump[] out from behind the tractor trailer" and enter his lane. Dew recognized the car as a police car and noticed the car's flashing lights. He did not hear a siren. All four tires of the police car crossed into Dew's lane. Dew slammed on his brakes to avoid hitting the police car. At trial, Dew testified that when he saw the police car enter his lane, the tractor trailer was approximately ten car lengths away from him, and that he was travelling at about forty-five to fifty miles per hour. Dew never came to a complete stop, and he stated that the police car missed hitting him by "about a foot or two, maybe three."

While on duty on the morning of March 1, 1996, appellant, a police sergeant for the Town of Iron Gate, observed several vehicles pass him. He recognized the license plate of one of the vehicles and suspected that the driver was driving on a suspended license. He also saw, in the front seat of the vehicle, a small child leaning up against the dashboard. Appellant radioed his dispatcher to determine whether the owner of the vehicle had a suspended license. The dispatcher confirmed appellant's suspicion. After following the suspect vehicle for some distance, appellant activated his emergency equipment. He observed the driver of the tractor trailer, which was between his car and the suspect vehicle, glancing in the rear-view mirror and looking for a place to pull over.[1] Appellant testified that the

_____
[1] Appellant testified that at the time of this incident, he had activated his emergency equipment, including both his lights

2

tractor trailer eventually pulled over onto a gravel shoulder.

As appellant passed the tractor trailer while still in pursuit of

the suspect vehicle, he saw Dew's vehicle approaching from about

450 feet away.

> Additionally, appellant testified as follows:
>> [W]hen I pulled out as I would do in any
>> situation . . . I carefully, as he pulled
>> over I carefully nosed out to where I could
>> see if there was traffic approaching.  And I
>> did see a car approaching . . . . I had my
>> emergency equipment activated.  I had my
>> siren on automatic.  As the tractor trailer
>> pulled off I saw the car heading towards me
>> northbound.  I saw him start to brake and
>> slow down and move to the right . . . .
>>
>> [M]y immediate thought was thank
>> goodness that this is a citizen that is
>> yielding, he sees my emergency equipment and
>> he is yielding to give me passage and I came
>> around the tractor trailer, I did accelerate
>> around the tractor trailer and stopped the
>> violator approximately . . . two-tenths of a
>> mile in front of where I passed the tractor
>> trailer.
>>
>> To the best of my recollection I was
>> back in the southbound lane before I even
>> encountered Mr. Dew.

Lee Turlington (Turlington), Assistant Attorney General,

testified for appellant at trial.  She stated that she possessed

special expertise in the legal aspects of emergency driving;

however, she admitted that she had never been called to consult

---

and his siren.  Dew testified that he saw the police car's
flashing lights, but did not hear the siren.  The trial court
made no finding on the issue of the siren.  For purposes of this
opinion, we assume without deciding that appellant activated all
the emergency equipment.

<u>on a criminal charge against an officer</u>.  Turlington testified that in civil cases the standard of care in vehicular pursuits is a "reasonable police officer" standard, rather than a "reasonable man" standard, and that the court should view the exercise of care through the police officer's eyes rather than through the eyes of a reasonable man.

Additionally, Turlington stated that when instructing law enforcement officers on the legal aspects of emergency driving, she specifically reviews the Code § 46.2-920 exemptions and she teaches that:

> [C]rossing a double yellow line as well as going . . . the wrong way down a one way street is not covered by the statute and . . . the rule is that you do not do it.  But in certain circumstances . . . an officer may find him or herself in the position of having to cross a double yellow line because of the particular circumstances of the case.

When asked how she would instruct police officers regarding their discretion and responsibility if they decide to cross a double line, Turlington responded as follows:

> [A]s far as personal responsibility, that they're not covered by the statute and that, of course, they put themsel[ves] at risk, I guess, of criminal prosecution because . . . the statute actually exempts you from criminal prosecution but that in certain circumstances . . . some discretion and not only due regard but some extraordinary prudence would be necessary in making that decision.

The trial court declined to adopt the "reasonable officer" standard as applied in civil cases.  Additionally, the court

4

emphasized that no emergency justified appellant's actions and found as follows:

> As to the standard of care here it seems to me, I don't have any appellate decisions apparently to guide me so I'll fashion what I believe common sense dictates.  Except as provided by statute whereby the common law, if there is any common law on it, in a lawful and legitimate <u>hot pursuit</u>, a reason to believe that the operation of a vehicle endangers life or property or reason to believe that the continued operation would endanger the occupants of the vehicle pursued there is <u>no legitimate basis to hold a traffic law enforcement officer to a diminished standard of care that would in any way be different from what we would require of our ordinary citizens. . . .</u>  But it seems to me that the standard here is that of a <u>reasonable person</u> and that discretion needed to be exercised or abused and I must conclude that it was abused.

(Emphasis added).  Thus, the court convicted appellant of reckless driving.

## II.  STANDARD OF CARE

Appellant contends that the trial court erred in holding him to an "ordinary" or "reasonable" person standard.  He asserts that the trial court should have employed the standard of gross negligence as applied in certain civil cases, and thus should have held him to the standard of a "reasonable police officer."

It is well established that a police officer is under a duty to operate his or her vehicle in a manner that is reasonable under the existing circumstances and conditions.  <u>See</u> <u>Meagher v. Johnson</u>, 239 Va. 380, 383, 389 S.E.2d 310, 311 (1990).  Although police vehicles generally are subject to all traffic regulations,

5

the legislature may provide exceptions in certain circumstances. See, e.g., Smith v. Lamar, 212 Va. 820, 822-23, 188 S.E.2d 72, 73 (1972) (citing Virginia Transit Co. v. Tidd, 194 Va. 418, 73 S.E.2d 405 (1952)); Colby v. Boyden, 241 Va. 125, 133, 400 S.E.2d 184, 189 (1991) (Compton, J., dissenting).

## A.  Code § 46.2-920 Exemptions

The Virginia General Assembly has provided limited exemptions from criminal prosecution for specified violations of traffic regulations by police officers.  Code § 46.2-920 provides that the driver of an emergency vehicle that is being used (1) in the performance of public services and (2) under emergency conditions may, without subjecting himself or herself to criminal prosecution, violate traffic regulations in the following six specific situations:

1. Disregard speed limits, while having due regard for safety of persons and property;

2. Proceed past any steady or flashing red signal, traffic light, stop sign, or device indicating moving traffic shall stop if the speed of the vehicle is sufficiently reduced to enable it to pass a signal, traffic light, or device with due regard to the safety of persons and property;

3. Park or stop . . .;

4. Disregard regulations governing a direction of movement of vehicles turning in specified directions so long as the operator does not endanger life or property;

5. Pass or overtake, with due regard to the safety of persons and property, another vehicle at any intersection;

6. Pass or overtake with due regard to the

6

> safety of persons and property, while en route to an emergency, other stopped or slow-moving vehicles, by going off the paved or main traveled portion of the roadway on the right.

Code § 46.2-920(A). The Supreme Court explained the rationale behind Code § 46.2-920 as follows: "In enacting [Code § 46.2-920], the legislature balanced the need for prompt, effective action by law enforcement officers and other emergency vehicle operators with the safety of the motoring public." Colby, 241 Va. at 132, 400 S.E.2d at 188-89. The purpose of Code § 46.2-920 is to give some leniency to the drivers of police, fire and ambulance vehicles in certain emergency situations. See, e.g., Phillips v. United States, 182 F.Supp. 312 (E.D.Va. 1960). However, this statute does not cover the crossing of a double yellow line, which is the conduct at issue in the instant case.[2] Nor did appellant's pursuit present an emergency situation.

### B. The Civil Standard for Exempted Behavior

The Supreme Court has held that, in determining the civil liability of a police officer for violating an act exempted by Code § 46.2-920, the appropriate standard to apply is not that of an "'ordinary person or 'ordinary motorist'" but that of "an

_____

[2]It is notable that the legislature provided that these exemptions do not shield a police officer or the driver of another emergency vehicle from criminal prosecution for conduct that is reckless. See Code § 46.2-920(B) ("Such exemptions shall not, however, protect the operator of any such vehicle from criminal prosecution for conduct constituting reckless disregard of the safety of persons and property.").

officer performing his duty under like circumstances."  Colby,
241 Va. at 131, 400 S.E.2d at 188 (citing Smith, 212 Va. at 824,
188 S.E.2d at 74).  Additionally, proving simple negligence is
insufficient to impose civil liability for acts covered under
Code § 46.2-920.  See id. at 130-31, 400 S.E.2d at 187-88.  The
Court explained that the exemption statute "tailored" a standard
to the particular acts recited therein.  See id. at 132, 400
S.E.2d at 188.  Thus, for an act exempted under Code § 46.2-920,
a plaintiff in a civil action must establish that the police
officer's conduct was grossly negligent in order to prevail.[3]
Id.; see also Meagher, 239 Va. at 383, 389 S.E.2d at 383-84
(holding that any failure of a police officer to operate his
vehicle in a reasonable manner is actionable only if it amounts
to gross negligence in the case of exempted behavior).

C.  The Civil Standard for Acts Not Exempted

The Supreme Court has also addressed cases in which a police
officer's conduct was not covered by the exemptions of Code
§ 46.2-920 and its predecessors and has set forth a different
standard of care for these situations.  Virginia Transit Co. v.

---

[3]Gross negligence is the "'heedless, palpable violation of
rights showing an utter disregard of prudence'" and the "'absence
of slight diligence, or the want of even scant care.'"  Meagher,
239 Va. at 384, 389 S.E.2d at 311-12; Colby, 241 Va. at 133, 400
S.E.2d at 189 (citations omitted).  Thus, in committing an act
covered by Code § 46.2-920, if a police officer exercises "'some
degree of diligence and due care'" and his actions do not reveal
the "'utter disregard of prudence amounting to complete neglect
of the safety of another,'" then a prima facie case of gross
negligence is not established.  See Colby, 241 Va. at 133, 400
S.E.2d at 189 (citation omitted).

8

<u>Tidd</u>, 194 Va. 418, 73 S.E.2d 405 (1952), involved a civil suit brought to recover damages for personal injuries resulting from a collision involving a police vehicle.  In that case, the police officer while en route to an investigation of an automobile accident, "made no effort to slow down," entered an intersection against the red light, and collided with a city bus.  <u>Id.</u> at 420, 73 S.E.2d at 407.  The Court held that where no statutory exemption permits a police officer to pass through a red light at an intersection, the police officer may be negligent as a matter of law.  <u>Id.</u> at 425, 73 S.E.2d at 410.[4]

> In reaching this decision, the Court explained:
> It is argued that if a police car giving an audible signal cannot run through a red traffic light then we would have the ridiculous situation of escaping law violators going joyfully on their way, while the police wait for a green light.  But it can just as well be argued to the contrary that the legislature was willing to take a chance on giving violators of the law a head start rather than endanger the lives of those who rely upon the safety of a green light.

<u>Id.</u> at 423-24, 73 S.E.2d at 409.  Moreover, the Court determined that the legislature enacted certain statutory exemptions to permit "police officers in the chase or apprehension of violators of the law to exceed the general speed laws" and reasoned that:

[4]"In <u>Virginia Transit Co. v. Tidd</u>, 194 Va. 418, 73 S.E.2d 405 (1952), we held that police vehicles were subject to all traffic regulations unless a specific exception is made. Thereafter the General Assembly of Virginia granted the conditional exception which permits a police vehicle to proceed through a red light."  <u>Smith v. Lamar</u>, 212 Va. 820, 822-23, 188 S.E.2d 72, 74 (1972).

9

> The fact that the legislature saw fit to make a specific exception in this instance is an added reason <u>why no implied exception may be read into [the statute] in order to permit police officers to run through red lights.</u>

<u>Id.</u> at 424, 73 S.E.2d at 409 (emphasis added).

The Court reaffirmed this rationale in <u>White v. Doe</u>, 207 Va. 276, 148 S.E.2d 797 (1966). There a police officer brought a motion for judgment for injuries sustained when his motorcycle crashed during a chase to apprehend a criminal suspect. In that case, the police officer argued that, "since he was a police officer attempting to apprehend a law violator, much like a volunteer attempting to rescue a person in danger, he was not charged with the same degree of care as is required of the ordinary person." <u>Id.</u> at 278, 148 S.E.2d at 799. The Supreme Court disagreed and found him contributorily negligent as a matter of law. A violation of the statute defining reckless driving "'is negligence sufficient to support a civil action if such negligence was the proximate cause of the injury or damage sustained.'" <u>Id.</u> at 280, 148 S.E.2d at 800 (quoting <u>Richardson v. Commonwealth</u>, 192 Va. 55, 56, 63 S.E.2d 731, 731 (1951)). In so holding, the Court again examined the exemption statute. Finding no specific provision exempting a police officer from compliance with the law prohibiting the overtaking or passing of other vehicles at intersections, the Court held that "police vehicles are subject to the laws regulating traffic, for the violation of which the operator of such a vehicle is guilty of

10

negligence as a matter of law."  Id. at 279-80, 148 S.E.2d at

799.  The Court explained as follows:

> The legislature, having dealt with the subject of the relationship of the traffic laws to police vehicles in such a selective manner, has clearly indicated that the operators of such vehicles are bound to observe the requirements of [the reckless driving statute] in the same manner as the operators of ordinary vehicles.
>
> And, since the only exceptions which are provided relate directly to police vehicles engaged in the apprehension of law violators, it is inescapable that [the reckless driving statute], to which there are no exceptions, must be observed by the operators of police vehicles even while engaged in the apprehension of law violators.

Id. (emphasis added).[5]

The rationale stated in Virginia Transit Co. and White, while involving civil negligence, is equally applicable to the instant case, which involves the criminal liability of a police officer.  The conduct at issue in this case is not covered by the exemption statute.  Moreover, even the exemptions of Code § 46.2-920 "do not protect the operator of any vehicle from criminal prosecution for conduct constituting reckless disregard for the safety of persons and property."  Smith, 212 Va. at 822, 188 S.E.2d at 74; see also Code § 46.2-920(B).  Indeed,

---

[5]"We reaffirmed Tidd in White v. John Doe, 207 Va. 276, 148 S.E.2d 797 (1966)[,] and applied the statutory mandate against a police vehicle overtaking or passing another vehicle in an intersection.  Subsequently the General Assembly of Virginia granted a conditional exception applicable to such overtaking and passing at an intersection."  Smith v. Lamar, 212 Va. 820, 823, 188 S.E.2d 72, 74 (1972).

11

appellant's own expert witness noted this provision as clearly stated in Code § 46.2-920.  Additionally, Code § 46.2-801 mandates that all drivers are subject to Chapter 8 of Title 46.2, which includes Code §§ 46.2-800 through 46.2-946.

The conduct at issue, passing on a double yellow line, is not exempted behavior.  Thus, the officer is subject to criminal prosecution as would be any other citizen.  See Virginia Transit Co., 194 Va. 418, 73 S.E.2d 405.  Further, no heightened standard of care is merited in a situation where no exemption applies.  Id.  Appellant's contention that his conduct is to be judged by a standard other than that applied to the conduct of "ordinary" persons is unsupported either by Virginia case law or by Virginia statutory law.  Finally, we note that "[i]f the General Assembly had desired to permit drivers of police vehicles, under certain circumstances, to" cross a double yellow line, "it would have done so or it can now do so.  It is not the function of th[is] [C]ourt to legislate or to use the office of construction to amend plain statutes."  Virginia Transit Co., 194 Va. at 425, 73 S.E.2d at 409.  Accordingly, we find no error in the trial court's determination of the proper standard of care to be applied.

### III.  SUFFICIENCY OF THE EVIDENCE

Lastly, appellant contends that the evidence was insufficient to convict him of reckless driving in violation of Code § 46.2-852, which provides as follows:  "Irrespective of the

12

maximum speeds permitted by law, <u>any person</u> who drives a vehicle on any highway <u>recklessly</u> or at a speed or <u>in a manner so as to endanger the life, limb, or property</u> of any person shall be guilty of reckless driving."  (Emphasis added).  <u>See also</u> Code § 46.2-804(6) ("Wherever a highway is marked with double traffic lines consisting of two immediately adjacent solid lines, no vehicle shall be driven to the left of such lines . . . .").  "'When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom.'"  <u>Woolfolk v. Commonwealth</u>, 18 Va. App. 840, 844, 447 S.E.2d 530, 532 (1994) (quoting <u>Traverso v. Commonwealth</u>, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)).  "[W]e will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it."  <u>Goins v. Commonwealth</u>, 251 Va. 442, 466, 470 S.E.2d 114, 130, <u>cert. denied</u>, ___ U.S. ___, 117 S. Ct. 222, 136 L.E.2d 154 (1996).  "Further, '[t]he weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide.'"  <u>Woolfolk</u>, 18 Va. App. at 844, 447 S.E.2d at 532 (quoting <u>Bridgeman v. Commonwealth</u>, 3 Va. App. 523, 528, 351 S.E.2d 598, 601-02 (1986)).  Reckless driving is a criminal offense and to sustain a conviction, the Commonwealth's evidence must establish guilt beyond a reasonable doubt.  <u>Bacon v. Commonwealth</u>, 220 Va. 766,

13

263 S.E.2d 390 (1980).

Viewing the evidence in the light most favorable to the Commonwealth, the prevailing party, the trial court did not err in finding appellant guilty of reckless driving. Appellant, in pursuing a driver suspected of operating her vehicle with a suspended license, crossed the double yellow line and entered an oncoming driver's lane. At the time he entered Dew's lane, appellant was approximately ten car lengths from him and this action forced Dew to "slam" on his brakes in order to avoid a collision. Appellant missed hitting Dew by "about a foot or two, maybe three." Further, no emergency situation warranted appellant's act of crossing the double yellow line. The judgment of the trial court was not plainly wrong or without evidence to support it.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

14